[Civ. No. 40559. Second Dist., Div. Three. Mar. 28, 1974.]

In re the Marriage of CECELIA K. and KENNETH J. TOTH.
CECELIA K. TOTH, Respondent, v.
KENNETH J. TOTH, Appellant.

## COUNSEL

Harris, Noble, Bauman, Uhler & Gallop, Harris, Noble, Campbell & Uhler, Richard Lloyd Noble, Kenneth G. Griffin and Erwin J. Keup for Appellant.
Fain & Lavine, Harry M. Fain and Jill S. Robbins for Respondent.

## OPINION

**LORING, J.**[*]—On April 7, 1969, plaintiff, Cecelia K. Toth, (hereafter Cecelia)[1] filed a complaint against defendant, Kenneth J. Toth (hereafter Kenneth) "1. To Declare Invalidity of Foreign Decree of Divorce; 2. For Separate Maintenance (Desertion and Extreme Cruelty); 3. For Dissolution of Partnership and Accounting; Declaration of a Constructive Trust" alleging that Kenneth purported to obtain a decree of divorce on April 9, 1968, in the County of Washoe, State of Nevada (proceeding number 243 165) which was "void" for want of jurisdiction in the Nevada court, because Kenneth had never been a bona fide domiciliary of the State of Nevada, and that a controversy existed between the parties regarding the validity of such divorce. By her second and third causes of action Cecelia alleged that the parties had been married in Houston Texas, on August 2, 1957, separated on April 2, 1967, and had no children. She sought an award of separate maintenance on the ground of desertion and on the ground of extreme cruelty. By her fourth cause of action Cecelia alleged an oral partnership to acquire and accumulate property during their marriage and to share equally in the proceeds, and by a fifth cause of action Cecelia sought to impose a constructive trust on property which had been acquired during marriage and which Kenneth had converted to his own use. Kenneth filed an answer and counterclaim, admitted the marriage, alleged the separation occurred at Far Hills, New

---

[*]Assigned by the Chairman of the Judicial Council.

[1]Since the parties were involved in several different proceedings against each other, we will refer to them by first names rather than by their legal capacities.

Jersey, and admitted that he had acquired a decree of divorce in Nevada as alleged and that it was in all respects valid and final. He denied any obligation to pay separate maintenance. As an affirmative defense he alleged that Cecelia was estopped to deny the validity of the Nevada decree since she had filed an action on January 14, 1969 (in Los Angeles County) to enforce the terms of the Nevada divorce decree awarding her alimony (in action No. RESL 61061)[2] and secured a decree in her favor declaring in effect that said Nevada divorce decree was valid and enforcing the terms thereof for her benefit; that in said proceedings she was represented by counsel and said decree was final. As a further affirmative defense Kenneth alleged that having enforced the terms of the Nevada decree and having obtained a modification thereof in proceeding No. RESL 61061, Cecelia could not seek a further modification without showing a material change of circumstances. As a counterclaim Kenneth sought reimbursement of expenses incurred by Cecelia by the unauthorized use of his credit after the rendition of the Nevada decree and its enforcement by proceeding No. RESL 61061 which sums were in excess of said decrees. Kenneth also alleged that within the preceding two years Cecelia had become indebted to him in New York in the sum of $10,000 "for money paid, laid out and expended [for her] at her request."

The action was tried on October 6 and October 7, 1970, and an "Interlocutory Judgment of Dissolution of Marriage"[3] was rendered on November 13, 1970 and entered November 17, 1970, in favor of Cecelia, in which the court found that the Nevada decree was "invalid and of no force and effect." Kenneth was ordered to pay Cecelia $300 per month spousal support for a period of five years, $1,500 attorney's fees (payable in installments) and the sum of $6,710 (payable in installments) as her share of the community or quasi-community property. Kenneth appeals from the interlocutory judgment.

### Contentions

Appellant's contentions may be summarized as follows:

1. The court erred in finding the Nevada divorce decree invalid because:

 a. It was entitled to full faith and credit;

---

[2]Filed under the provisions of the Uniform Reciprocal Enforcement of Support Act. (Code Civ. Proc., § 1650 et seq.)

[3]Neither the clerk's transcript on appeal nor the original court file includes any amended complaint in which the cause of action for separate maintenance was changed to a cause of action for divorce. The court deemed the complaint "already ipso facto amended under the Act (Family Law Act); . . . for dissolution . . . and for spousal support and division of property."

b. Cecelia did not sustain her burden of proof that the Nevada court lacked jurisdiction;

c. By her prior California action to enforce the Nevada decree (No. RESL 61061) Cecelia is estopped to question the validity of the Nevada decree;

d. The judgment is contrary to California public policy.

2. The court erred in apportioning property and awarding alimony for five years.

3. The court failed to give him credit for community expenses which he paid.

4. The court committed error in refusing to receive in evidence a copy of the transcript of testimony in the Nevada proceeding.

*Facts*

At the time Kenneth and Cecelia were married in 1957, Kenneth was a member of the United States Air Force, stationed at Houston, Texas. Except for a brief period when he was stationed at an air base near Sacramento, California, neither party had ever lived in California until Kenneth moved to Los Angeles and rented a house in July 1968. After his discharge from military service in 1959, the parties lived in Cambridge and Boston, Massachusetts and Summit and Far Hills, New Jersey, until they separated in April 1967. While they lived in New Jersey both parties commuted to work in New York City. In 1965 Kenneth obtained employment with McKinsey & Company, an international management consulting firm with offices in major cities of the United States and foreign countries. Thereafter, from one-half to two-thirds of his time was spent travelling and doing field work for his employer. The parties separated April 2, 1967, and Kenneth moved into a New York club. On July 24, 1967, Kenneth executed a two-year lease on a New York apartment and continued to work out of the New York office for his employer until he was assigned to the west coast by his employer in October 1967. His employer had offices in San Francisco and Los Angeles. The assignment was temporary. Thereafter, the Los Angeles office exercised administrative jurisdiction over his work assignments. Kenneth established a residence in Reno, Nevada, in October 1967. He obtained a Nevada driver's license and filed tax returns on the basis of a Nevada residence.

From his home in Reno, Kenneth carried on work assignments in California, Montana, Alaska, Texas, Illinois, New York and Mexico. The air travel time from Reno to Los Angeles was less than the surface

travel time from Far Hills, N.J. to Manhattan, and McKinsey paid the travel bills. During his military service Kenneth at one time had been stationed at Stead Air Force Base near Reno. He never returned to live in Massachusetts, New Jersey, or New York. Kenneth filed an action for divorce in Washoe County, Nevada; summons was ordered published and issued on March 5, 1968, and served on Cecelia personally in Far Hills, N.J. on March 9, 1968. Her default was entered April 8, 1968, and the district court rendered a judgment of divorce in favor of Kenneth on April 9, 1968, in which decree Kenneth was ordered to pay Cecelia $400 per month for 12 months, for her support and maintenance, plus $150 per month for 12 months for psychiatric treatments for Cecelia. The testimony presented to the district court, which the Los Angeles Superior Court refused to receive in evidence, consisted of the testimony of Kenneth that he first went to Nevada to make it his home on October 8, 1967, and lived in a rented apartment; that he left Nevada frequently on business, specifying the dates; that he intended to make Nevada his permanent home. He also produced the testimony of the manager of the apartment house who verified his presence in Nevada. After the rendition of the Nevada divorce decree in April 1968 Kenneth continued to reside in Reno, Nevada, until he moved to Los Angeles in July 1968. Nine months later he left the employment of McKinsey, moved to Monterey, California, where he engaged in the real estate business, and finally moved to San Francisco in January of 1970. Kenneth married a second time on May 2, 1970, in San Francisco. In the meantime, Cecelia apparently moved from New Jersey to New York. She consulted Mr. Groban, a New York attorney, regarding enforcing her right of support, and initiated proceedings in the Family Court in New York, which resulted in the action filed in Los Angeles on October 25, 1968, under the provisions of the Uniform Reciprocal Enforcement of Support Act (No. RESL 61061), in which proceeding the Los Angeles Superior Court ordered enforcement of the Nevada decree, and made a slight increase in the amount of monthly support payments.

## Discussion

Although Kenneth, as appellant, has raised several apparently meritorious issues on appeal, we need only discuss one which is dispositive of most of the other issues and determinative of this appeal. He contends that the court erred in finding the Nevada divorce decree invalid because by her prior California action to enforce the Nevada decree (No. RESL 61061) Cecelia is estopped to question the validity of the Nevada decree.

We note at the outset that the District Court of Washoe County, Nevada, purported to acquire jurisdiction of Cecelia by virtue of published

summons and personal service on Cecelia at her then domicile in New Jersey. Under such circumstances, absent consent of the parties, the Nevada court at most, assuming a valid Nevada domicile by Kenneth, acquired only an in rem jurisdiction to dissolve the marital res and it did not acquire in personam jurisdiction to determine Cecelia's right to support. (*Estin* v. *Estin,* 334 U.S. 541 [92 L.Ed. 1561, 68 S.Ct. 1213, 1 A.L.R.2d 1412]; *Hudson* v. *Hudson,* 52 Cal.2d 735, 739 [344 P.2d 295].)

Notwithstanding the terms of such Nevada decree, Cecelia did have the right to sue Kenneth in the state of her domicile or elsewhere to enforce her in personam right to support. (*Vanderbilt* v. *Vanderbilt,* 354 U.S. 416 [1 L.Ed.2d 1456, 77 S.Ct. 1360]; *Lewis* v. *Lewis,* 49 Cal.2d 389, 393-394 [317 P.2d 987].) Under Nevada law we may assume, in the absence of any showing to the contrary, that the Nevada court had authority to render a judgment for support in favor of Cecelia which was at least binding on Kenneth in Nevada although not binding on Cecelia in the absence of personal jurisdiction over her or her consent. A litigant in family disputes is often estopped to deny that a particular court was without jurisdiction to make an order, when the subject matter of the order was presented by and was a direct result of his own pleadings. (See *Falconer* v. *Falconer,* 95 Cal.App.2d 4, 5-6 [212 P.2d 5]; see also *Maloney* v. *Maloney,* 67 Cal.App.2d 278, 279 [154 P.2d 426].) Consequently, upon the rendition of the Nevada decree Cecelia had an election of rights or remedies as to her support: she could accept and, if necessary, seek to collect under the provisions of the Nevada decree in Nevada, or she could have instituted a new action in the state of her domicile, or in Kenneth's state of domicile (as she eventually did by the instant proceeding) to enforce her in personam right of support, of which she could not be deprived by a court without her consent unless it had personal jurisdiction over her, which the Nevada court did not have at the time it rendered its decree on April 9, 1968. However, upon the advice of New York counsel[4] she elected to enforce the terms of the Nevada decree when Kenneth became delinquent under its provisions. A petition was filed by Cecelia in the Family Court of New York as a consequence of which proceedings were initiated in Los Angeles against Kenneth under the provisions of the Uniform Reciprocal Enforcement of Support Act. (Code Civ. Proc., § 1650 et seq.) As a result of those proceedings, the California court, in No. RESL 61061, made an order which provided in part: "The below order is made in accordance with the Nevada State Divorce No. 243165, dated April 9, 1968, and to show that this order will terminate on May 1, 1969."[5]

---

[4]His fee bill was offered in evidence and it was substantial. We refer to this simply to suggest that what the New York lawyer did was not merely pro forma.

[5]On our own motion we have augmented the record on appeal to include the court

 It has long been established in California that a person by his conduct may be estopped to question the validity of a foreign decree of divorce otherwise void for want of jurisdiction. For example, it has frequently been held in California that where a spouse, although wholly innocent of the procuring of a divorce decree by the other spouse, remarries in reliance thereon, he or she is estopped to question the validity of the divorce on jurisdictional grounds. (*Rediker* v. *Rediker,* 35 Cal.2d 796, 805 [221 P.2d 1, 20 A.L.R.2d 1152]; *Bruguiere* v. *Bruguiere,* 172 Cal. 199, 204 [155 P. 988]; *Chilcott* v. *Chilcott,* 257 Cal.App.2d 868, 870 [65 Cal.Rptr. 263]; *Union Bank & Trust Co.* v. *Gordon,* 116 Cal.App.2d 681, 684-686 [254 P.2d 644]; *Bernheimer* v. *Bernheimer,* 103 Cal.App.2d 643, 646 [230 P.2d 17]; *Falconer* v. *Falconer,* 95 Cal.App.2d 4, 5-6 [212 P.2d 5].) See also Annotation, Divorce—Decree of Foreign Country, 13 A.L.R. 3d 1419, 1452, where it is stated: "Notwithstanding the general invalidity of a divorce decree rendered in a foreign nation where neither spouse was domiciled, a number of courts have indicated that practical recognition may be accorded such decrees by estoppel, laches, unclean hands, or similar equitable doctrine under which the party attacking the decree may be effectively barred from securing a judgment of invalidity." [Fn. omitted.]

Likewise, when a third person marries a divorced person with knowledge of the circumstances under which the divorce decree was obtained, such third person is estopped to question the validity of the divorce on jurisdictional grounds. (*Dietrich* v. *Dietrich,* 41 Cal.2d 497, 505 [261 P.2d 269]; *Estate of Vinson,* 212 Cal.App.2d 543, 547 [28 Cal.Rptr. 94]; *Schotte* v. *Schotte,* 203 Cal.App.2d 28, 31 [21 Cal.Rptr. 220].) The rationale of all of these cases is that California public policy will not permit a litigant "to blow hot and cold." He cannot take the benefits of a divorce decree when it suits his purpose and then reverse his position and repudiate the divorce decree on the ground that it is void for want of jurisdiction (even though it may be) when it is no longer profitable or to his advantage to do so.

Although the case at bar involves this same public policy of estoppel, it also involves something more. Cecelia obtained a judgment from a California court on the premise that the Nevada decree was valid. When she exhausted the benefits of the Nevada decree, by virtue of the California decree in the RESL proceeding, she then sought to reverse that position and request the courts of California to reverse their position and

file in No. RESL 61061 which was before the court below (Cal. Rules of Court, rule 12(a).)

declare that the Nevada decree had been invalid for want of jurisdiction all along, in order that she might obtain more support than had been ordered in the RESL proceeding which recognized the Nevada decree. It is contrary to our public policy to allow California courts to be used in such a manner. Although no identical case has been found by us or cited by counsel, the case at bar is in legal effect substantially similar to the case of *Chamblin* v. *Chamblin,* 362 Ill. 588 [1 N.E.2d 73, 104 A.L.R. 1183] wherein the husband obtained a Nevada divorce decree and the wife filed an action in Nevada to set it aside on the ground that it was void for want of jurisdiction. The Nevada court held against her that the prior decree was valid. Thereafter, the wife sued the husband in Illinois for separate maintenance, alleging that the husband's Nevada divorce decree was void for want of jurisdiction. The Illinois Circuit Court rendered judgment in her favor. The Illinois Supreme Court reversed, holding that the Nevada decree declaring the prior Nevada divorce decree valid was entitled to full faith and credit under the United States Constitution, stating (1 N.E.2d at pp. 74-75): "A court's jurisdiction having been once attacked, the former adjudication precludes the raising of the question again. [Citation.] The doctrine of res adjudicata and estoppel applies not only to all matters that were litigated, but to all others that might have been presented in that proceeding." ■ To paraphrase that language, as applied to the case at bar, we hold that the jurisdiction of the California court in No. RESL 61061 having been once invoked to enforce and uphold the validity of the former Nevada adjudication precludes subsequently challenging the validity of the Nevada decree. The doctrine of res judicata and estoppel applies not only to all matters that were adjudicated but to all matters that might have been presented in that proceeding.

An interesting application of these principles is found in the case of *Hammell* v. *Britton,* 19 Cal.2d 72 [119 P.2d 333], wherein plaintiff filed an action in equity to be relieved of a California judgment (called the second California judgment) which held that a Colorado decree of divorce was invalid and void for want of jurisdiction, which California judgment was based on a Colorado judgment (which the Supreme Court called the first Colorado judgment), which held that the Colorado divorce decree was void for want of jurisdiction and set it aside. After the rendition of the California judgment that the Colorado divorce decree was void, the Colorado court rendered a judgment in a third proceeding which set aside the "first" Colorado decree which had set aside the Colorado divorce decree on the ground that the "first" Colorado decree was void for want of jurisdiction. By its third decree Colorado reestablished its divorce decree as valid. The California trial court sustained defendant's demurrer to the

complaint without leave to amend. The California Supreme Court affirmed, stating (19 Cal.2d at pp. 83-85): "Plaintiff was not prevented by any fraudulent conduct of defendants from presenting his full case in court. He has not set forth any equitable excuse for not having made the defense of fraud or lack of jurisdiction or for having failed to prevail thereon in the California action with reference to the first Colorado judgment, and if it may be said that he did make such a defense, then the issue is *res judicata* by the second California judgment and he is estopped to assert it in this action.

"The third justification claimed by plaintiff as a basis for equitable relief is that the full faith and credit clause of the United States Constitution compels the recognition by this court of the second Colorado judgment vacating the first Colorado judgment, and that by this proceeding in equity the second California judgment must be set aside because it rests on a false premise, that is, that the Colorado divorce decree was invalid and therefore the Brittons were husband and wife, whereas the Colorado court has now declared that its divorce decree is valid and its judgment declaring it invalid is a nullity. Plaintiff cites no authority supporting that proposition. As we have seen, plaintiff is now estopped to assert the invalidity of the first Colorado judgment having had his day in court on that issue in the California action. . . .

". . . Under these circumstances it cannot be seriously doubted that the California judgment was an adjudication on the validity of the Colorado divorce decree and first judgment vacating said decree. The full faith and credit clause does not compel this court to set aside a judgment rendered in this state in an action involving the same issue as that subsequently adjudicated by a court of a sister state. So to apply that clause would result in giving greater faith and credit to the judgments of the courts of other states than to those of the courts of this state. That provision of the Constitution cannot reasonably be interpreted to authorize a person to litigate a question *ad infinitum*. If full faith and credit is to be given, it should have been given to the California judgment by the Colorado court when entertaining the plaintiff's action which resulted in the second Colorado judgment. In *Martin Bros. Box Co.* v. *Fritz*, 228 Iowa 482 [292 N.W. 143], an Iowa court gave a default judgment *in personam* for plaintiff against an Indiana corporation. The corporation moved the Iowa court to vacate that judgment on the ground of lack of jurisdiction of the person. That motion was denied. Thereafter plaintiff sued on that judgment in Indiana, and the Indiana court gave judgment for the corporation on the ground that the Iowa court lacked jurisdiction. The corporation then brought an action in Iowa based upon the Indiana judgment for equitable

relief from the Iowa judgment. Relief was denied and the court remarked at page 148:

" 'The full faith and credit clause requires the courts of one state to give to the judgment of a court of another the same effect that is accorded such judgment in the latter state. [Citations.] Under such clause, since the Iowa judgment has been adjudicated to be valid in Iowa, the Indiana court should have enforced such judgment. It refused to do so. We know of no decision which would support the proposition that, if a judgment has been adjudicated to be valid and enforcible by a court in Iowa, but enforcement of such judgment is thereafter refused by a court in Indiana, the Iowa court must then follow the example of the Indiana court and also refuse to enforce such judgment. We are unwilling to so construe the full faith and credit clause.' "

Although the factual situation involved in *Hammell* v. *Britton* is somewhat complex, it is clear that what the California Supreme Court said to the appellant therein was: You induced the California court to reach a conclusion that the Colorado divorce decree was void. Having done so, you may not now be heard to say that the Colorado divorce decree is valid even though the Colorado court has reversed its position and has held that it is valid.

Insofar as the case at bar is concerned, having induced the' California court to in effect determine that the Nevada decree was valid and to make an order enforcing its terms, Cecelia may not now be heard to say that the Nevada decree is void.

We conclude that it was error for the court to make an award of alimony to Cecelia on the premise that the Nevada decree was void. We will hereafter make an appropriate modification of the judgment.

By the same token, the Nevada court in no way purported to divide the property of the parties which was acquired during marriage, and it did not have jurisdiction to do so, since it did not have in personam jurisdiction of Cecelia, and she did not consent thereto. The issue of a division of property was never submitted to any court, until it was adjudicated in these proceedings by the decree appealed from, and no question of estoppel or res judicata prevented Cecelia from submitting that issue to the court below for decision in these proceedings. (*Hudson* v. *Hudson, supra,* 52 Cal.2d 735; see generally 3 Witkin, Summary of Cal. Law (1960) Husband and Wife, § 57, p. 2606.)

■ Since the court below made no findings we are required to presume that the court gave due consideration to Kenneth's counterclaims

in making its division of property. The portion of the judgment dividing the property of the parties must therefore be affirmed.

By our decision we, in effect, give full faith and credit to the judgment of a sister state not because the federal Constitution compels us to do so but because we apply California public policy to maintain the sanctity of our own California judgment. But more importantly, we also give effect to California's public policy which manifests primary concern for the matrimonial status of California domiciliaries. In *Delanoy* v. *Delanoy,* 216 Cal. 27 [13 P.2d 719, 86 A.L.R. 1321], the court said, at page 35: "In the second place the Missouri decree did not affect the status of a California citizen. When the Missouri decree was rendered the wife was a citizen of New York. It is readily conceivable that California might recognize a foreign divorce decree when such decree only affects the status of foreign citizens, but might refuse to recognize such foreign decree when it affects the status of a California citizen. California has no particular interest in the status of foreign citizens. This distinction is well recognized."

The judgment of the court is modified by deleting therefrom the following paragraphs: "The court orders that an interlocutory judgment be entered declaring that the parties are entitled to have their marriage dissolved. This interlocutory judgment does not constitute a final dissolution of marriage and the parties are still married and will be, and neither party may remarry, until a final judgment of dissolution is entered.

"The court also orders that, unless both parties file their consent to a dismissal of this proceeding, a final judgment of dissolution be entered upon proper application of either party or on the court's own motion after the expiration of at least six months from the date the court acquired jurisdiction of the respondent. The final judgment shall include such other and further relief as may be necessary to a complete disposition of this proceeding, but entry of the final judgment shall not deprive this court of its jurisdiction over any matter expressly reserved to it in this or the final judgment until a final disposition is made of each such matter.

"1. That certain divorce decree granted to Respondent on April 9, 1968, in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, in Action No. 243165, is hereby declared invalid and of no force and effect.

"2. Respondent is ordered to pay Petitioner spousal support in the sum of $300.00 per month, payable one-half on the first and one-half

on the fifteenth day of each calendar month, commencing October 15, 1970, and continuing for a period of five (5) years, and then to terminate."

Paragraphs 3, 4 and 5 of said judgment are renumbered 1, 2 and 3, respectively. As so modified, the judgment is affirmed, each party to bear his or her own costs on appeal.

Cobey, Acting P. J., and Allport, J., concurred.

A petition for a rehearing was denied April 16, 1974, and respondent's petition for a hearing by the Supreme Court was denied May 22, 1974.