[Civ. No. 50536. First Dist., Div. Four. May 6, 1983.]

In re the Marriage of GEORGINA J. and CHARLES W. MAXFIELD.
GEORGINA J. MAXFIELD, Appellant, v.
CHARLES W. MAXFIELD, Respondent.

COUNSEL

John F. Foley for Appellant.

Edward S. Miller for Respondent.

OPINION

**CHRISTIAN, J.**—Georgina J. Maxfield appeals from an order in this marital proceeding dismissing a contempt proceeding and vacating a prior order for

modification of the interlocutory judgment of dissolution. Reversal is required as to both actions.

The procedural sequence must be related in detail. On August 3, 1976, the superior court rendered an interlocutory judgment of dissolution of the marriage of Georgina and Charles Maxfield, reserving jurisdiction to award spousal support for a period of two years.

The judgment recognized a community property interest in husband's pension from Lockheed, his employer at that time. It provided that wife was entitled to a portion of payments ultimately received by husband according to the following formula:

One-half of each payment received by respondent upon his retirement from Lockheed computed as follows:

$$\frac{13}{\text{Total months employed by Lockheed}} \times \begin{array}{l}\text{Monthly} \\ \text{payment from} \\ \text{Lockheed}\end{array}$$

The decree also awarded wife "$425.00 per month as spousal support beginning on July 15, 1976, for three months, and $325.00 per month beginning on October 15, 1975 [*sic*] for three months." The court reserved "jurisdiction to award spousal support" until July 15, 1978.

On July 11, 1978, pursuant to a stipulation executed by the spouses and their attorneys, the court modified the interlocutory judgment. The stipulated modification provided that husband pay wife a lump sum of $1,000 immediately and spousal support of $750 per month commencing July 1, 1978. It further stated that monthly spousal support "shall be increased by 8 percent" each year. The wife waived all interest in husband's pension "including the right to receive any portion thereof as set forth in . . . the Interlocutory Judgment" of 1976.

Initially husband complied with the support provisions of the modification. But in December 1979 he ceased making spousal support payments and, on advice of counsel, informed wife that he considered the 1978 modification void and nonbinding. Wife sought a contempt sanction to enforce the decree as modified. After hearing testimony the court terminated the contempt hearing and vacated the order of modification on the ground that "the order of modification was entered in reliance upon the partys' [*sic*] stipulation and not upon a showing of substantial change of circumstances." The present appeal followed.

## I

 Where no party appeals or otherwise directly attacks, within the applicable statutory periods, a modification in the spousal support component of an interlocutory judgment of dissolution, that modification becomes final for purposes of res judicata and collateral estoppel. (*Wodicka* v. *Wodicka* (1976) 17 Cal.3d 181, 188-189 [130 Cal.Rptr. 515, 550 P.2d 1051].) The court nevertheless vacated the order of modification, because the order failed to recite findings of changed circumstances. It is true that such findings are ordinarily a prerequisite for a modification of spousal support. (*In re Marriage of Clements* (1982) 134 Cal.App.3d 737, 745-746 [184 Cal.Rptr. 756].) It is not error, however, to make no findings of changed circumstances where the parties have stipulated to the terms of the modification and their attorneys have drafted and submitted to the court the order ultimately entered. (Compare *In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 75-76 [190 Cal.Rptr. 104] [findings mandatory "where requested"].) Doctrines of waiver and invited error will generally bar even direct attack upon an order or judgment entered pursuant to stipulation. Here, husband did not appeal the order or make a timely motion under Code of Civil Procedure section 473 to set it aside. The stipulated modification thereby became res judicata. (*In re Marriage of Buckley* (1982) 133 Cal.App.3d 927, 934-936 [184 Cal.Rptr. 290]; see also *In re Marriage of Mahone* (1981) 123 Cal.App.3d 17, 21-22 [176 Cal.Rptr. 274].)

 The claimed error does not render the order void. The court had jurisdiction over the parties and subject matter. In the sense that any error is contrary to law, the court arguably exceeded its "authority," as husband claims, by not expressly finding changed circumstances before modifying spousal support. The defect, however, is merely a nonjurisdictional mistake of law and the order remains immune from collateral attack. *Haldane* v. *Haldane* (1962) 210 Cal.App.2d 587 [26 Cal.Rptr. 670], is instructive. There, the husband maintained that an interlocutory dissolution decree was void due to the wife's failure at trial to introduce corroborative evidence of her residency. The court found this deficiency in the showing of the prevailing party at the prior proceeding did not prevent that determination from being res judicata. "Although this oversight was judicial error which would have required a reversal if an appeal had been taken from the judgment [citation], it does not follow that the interlocutory decree was void." (*Id.,* at p. 597.) Similarly, in *Badillo* v. *Badillo* (1981) 123 Cal.App.3d 1009 [177 Cal.Rptr. 56], a court ordered an allegedly unequal division of community property and thereby exceeded its jurisdiction by awarding relief in excess of that demanded in the complaint. "The relief awarded is within the scope of the prayer for disposition of property 'according to law,' even though the offset failed to comply with Civil Code section 4800. The error is subject to reversal or modification on appeal, but is not void or subject to collateral attack [citations]." (*Id.,* at p. 1012.)

■ A judgment or order which has become final may be set aside upon grounds of extrinsic fraud or mistake. (*In re Marriage of Park* (1980) 27 Cal.3d 337, 342 [165 Cal.Rptr. 792, 612 P.2d 882]; *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471-473 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]; *In re Marriage of Carletti* (1975) 53 Cal.App.3d 989, 992-993 [126 Cal.Rptr. 1]; *In re Marriage of Nicolaides* (1974) 39 Cal.App.3d 192, 198 [114 Cal.Rptr. 56].) "Intrinsic fraud or mistake, on the other hand, is not grounds for relief. When the fraud or mistake ' "goes to the merits of the prior proceedings, which should have been guarded against by the plaintiff at that time," ' relief is denied in deference to the stronger policies of finality of judgments and res judicata. [Citations.]" (*In re Marriage of Wipson* (1980) 113 Cal.App.3d 136, 141-142 [169 Cal.Rptr. 664].) As husband had every opportunity during the modification proceedings to require the wife to show changed circumstances, the absence of proof and findings on this subject is intrinsic mistake. Even were it possible to characterize any mistake here as extrinsic, equitable relief of this sort would be unavailable to husband here as, by his stipulation to the modification order, "the complaining party has contributed to the fraud or mistake giving rise to the judgment thus obtained." (*Kulchar v. Kulchar, supra,* 1 Cal.3d 467, 473; *In re Marriage of Carletti, supra,* 53 Cal.App.3d 989, 992-993.)

II

Husband maintains this court should affirm the order vacating the modification as the court lacked jurisdiction to extend spousal support beyond July 15, 1978.[1] Because the disposition, if proper, must be affirmed even if the ground upon which the court relied was not correct, we now examine husband's argument.

The interlocutory judgment of 1976 states that "jurisdiction to award spousal support is reserved for a period of two years commencing July 15, 1976." The modification order providing for monthly support payments of $750 (to be increased 8 percent each year) was filed July 11, 1978. Husband, relying upon Civil Code section 4801, subdivision (d), as construed in *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41], argues that the court, by its 1976 decree, divested itself of jurisdiction to extend spousal support beyond July 15, 1978.

■ "Collateral attack is proper to contest lack of personal or subject matter jurisdiction or the granting of relief which the court has *no power* to grant

---

[1]During the hearing on the matter, husband contended, as he has here, that the 1976 decree barred any extension of support beyond the two-year period in which jurisdiction was reserved. Wife maintained the 1978 modification was nonetheless res judicata. The court discussed neither argument but included in its order the following finding: "That this court has jurisdiction to modify obligations to pay spousal support."

[citations]." (*Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 950 [126 Cal.Rptr. 805, 544 P.2d 941]; see also *Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 493 [165 Cal.Rptr. 825, 612 P.2d 915]; *Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 654 [165 Cal.Rptr. 877, 612 P.2d 967].) There is a jurisdictional aspect to the alleged error in the 1978 modification. But the claimed defect does not necessarily open the order to collateral attack. "[Even if] the defect in the divorce judgment was jurisdictional, . . . in the absence of unusual circumstances 'collateral attack will not be allowed where there is fundamental jurisdiction [i.e. of the person and subject matter] even though the judgment is contrary to statute.' [Citation.] Where some of the parties have relied on, or changed their position in accordance with the former judgment, a court may deny collateral attack. [Citations.]" (*Armstrong* v. *Armstrong, supra,* 15 Cal.3d 942, 951; see also *Moffat* v. *Moffat, supra,* 27 Cal.3d 645, 657.) The court in 1978 had "fundamental jurisdiction": it had personal jurisdiction over the parties and it had subject matter jurisdiction over spousal support. (Compare *In re Marriage of Smith* (1982) 135 Cal.App.3d 543 [185 Cal.Rptr. 411] [judgment set aside where personal jurisdiction lacking due to defective service of process].) The fault, if any, was in the extent of the relief granted. Finally, there was detrimental reliance upon the validity and finality of the stipulated modification in the form of the wife's waiver of her community property interest in husband's Lockheed pension.

Courts have frequently applied the principle articulated in *Armstrong* to accord res judicata finality to judgments defective in more serious respects than the 1978 modification assertedly was. In *In re Marriage of Steiner* (1979) 89 Cal.App.3d 363 [152 Cal.Rptr. 612], it was alleged that Colorado statutes precluded a court of that state from entertaining a petition for modification of a California support decree as Colorado was not the "home state" of the wife and child. Even if the Colorado court had no authority to order modification, its decision was res judicata. "A violation of such statutory provisions rises only to the level of judicial error within the Colorado court's fundamental jurisdiction. Since it appears the Colorado decree is final, such nonjurisdictional error does not subject that decree to collateral attack. [Citation.]" (*Id.,* at p. 373; see also *In re Marriage of Toth* (1974) 38 Cal.App.3d 205 [113 Cal.Rptr. 131].) Similarly, in *Frank* v. *Frank* (1969) 275 Cal.App.2d 717, 718 [80 Cal.Rptr. 141], a court, in direct contravention of then applicable statutes had entered an interlocutory judgment of divorce which provided for alimony for a period of four years "irrespective" of whether the wife remarried. The appellate court adhered to "the general rule in this state that a judgment or order is res judicata even though contrary to statute where the court has jurisdiction of both the subject matter and the parties." (*Id.,* at p. 722.) *Frank* continued that in failing to appeal the alimony portion of the judgment, the husband had accepted its benefits. "By failing to challenge the alimony award on appeal, he encouraged plaintiff to rely upon its validity, preserved for his own benefit the automatic

four-year termination provision which would obviously have been highly favorable to him had plaintiff not remarried within that period and, at the same time, gambled upon the fact that if she *did* remarry within four years, he could attack the alimony award collaterally and prevail in any event." (*Id.*, at p. 723.) *In re Marriage of Toth, supra,* 38 Cal.App.3d 205, echoes the equitable reasoning of *Frank.* "The rationale of all of these cases is that California public policy will not permit a litigant 'to blow hot and cold.' He cannot take the benefits of a divorce decree when it suits his purpose and then reverse his position and repudiate the divorce decree on the ground that it is void for want of jurisdiction (even though it may be) when it is no longer profitable or to his advantage to do so." (*Id.*, at p. 212.)

Even more compelling equitable considerations than those present in *Steiner, Frank* or *Toth,* preclude collateral attack in this case. ▇▇ Husband did not merely neglect to appeal a determination in a contested proceeding, he stipulated to the disposition and thereby helped procure the alleged error. Consequently, both res judicata and equitable estoppel bar his attack upon the 1978 modification.

▇▇ Even were collateral attack permitted here, examination of the 1976 and 1978 orders establishes that the court did not exceed its jurisdiction when it extended spousal support. *In re Marriage of Morrison, supra,* 20 Cal.3d 437, 453, disapproves the reasoning of *In re Marriage of Patrino* (1973) 36 Cal.App.3d 186 [111 Cal.Rptr. 367], and *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93 [113 Cal.Rptr. 58] (upon which husband relies in part) that Civil Code section 4801, subdivision (d), evidences a policy favoring termination of jurisdiction over spousal support. Unless it is very clear that the supported spouse will be able to meet his or her needs in the future, "the court should not 'burn its bridges' and fail to retain jurisdiction." (*In re Marriage of Morrison, supra,* 20 Cal.3d 437, 453; see also *In re Marriage of Dennis* (1973) 35 Cal.App.3d 279, 285 [110 Cal.Rptr. 619]; *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 896 [101 Cal.Rptr. 295].) The purpose of section 4801, subdivision (d), (like its predecessor, former § 139.7) is to ensure that a court puts both spouses on notice concerning whether or not jurisdiction is retained. "The trial court was required to expressly indicate in its order if it wished to retain jurisdiction. . . . If the court retained jurisdiction for only a limited period of time, that time period was expressly set forth in the order, so the supported spouse knew the time within which he or she had to petition for additional relief." (*In re Marriage of Morrison, supra,* 20 Cal.3d 437, 446-447.) The 1976 decree, unlike that in *Morrison,* did not provide that all spousal support obligations "terminate absolutely" upon a certain date (*id.*, at p. 441); instead, it reserved "jurisdiction to award spousal support" until July 15, 1978. The court thereby provided that its authority to take new judicial action concerning

spousal support would expire on that date. It did not purport to limit the nature of relief it could grant provided it acted within that jurisdictional period.

It is preferable that a reservation of jurisdiction unambiguously indicate that the authority to extend support beyond the period originally provided is among the powers retained. (See *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352 [164 Cal.Rptr. 381].) Nonetheless, we are confident that "award" as used in the 1976 interlocutory judgment includes the concept of extension of support. A court "awards" spousal support through a discrete judicial act; the "award" is consummated upon the entry of the order or judgment although the obligations and entitlements established in that order may continue for a substantial period thereafter.

■ Error is never presumed. Husband, however, asks us to do so in two respects: First, he urges, in effect, that the trial court ignored the judicial policy disfavoring arbitrary termination of jurisdiction and intended by its 1976 order to foreclose the possibility of any spousal support obligations beyond July 15, 1978. (See *In re Marriage of Morrison, supra,* 20 Cal.3d 437; *In re Marriage of Keeva* (1977) 66 Cal.App.3d 512 [136 Cal.Rptr. 82].) Husband's argument requires us to conclude further that in 1978 the court misinterpreted its own prior decree. *Wodicka* v. *Wodicka, supra,* 17 Cal.3d 181, provides a useful comparison. There, the original interlocutory judgment provided for child support "until the child reaches her majority." A subsequent order provided that support payments would terminate when the child reached the age of 21. The Supreme Court held the father could not obtain collateral relief from the latter order on the ground that "majority" was legislatively defined as the age of 18. "In the case at bench, the issue of the intent of the court in its use of the word 'majority' in the July 5, 1972, order increasing child support payments was before the court in a proceeding to increase support payments in April 1974. The court's order that child support was to continue until Kimberly reached 21 years of age was a determination that the word 'majority' in the July 5, 1972, order meant 21 years. Although the order of April 26, 1974, was appealable [citations], defendant did not take an appeal from it. Accordingly, when the order became final, the issue of the meaning of the word 'majority' in the order of July 5, 1972, became res judicata between the parties." (*Id.,* at pp. 188-189.) ■ ■ In modifying spousal support in 1978, the court necessarily found that an extension of support constituted an "award" within the meaning of its 1976 decree. Its resolution of this legal question is itself a determination to which res judicata and collateral estoppel attach. As so construed, the 1976 decree authorized the court to extend support beyond July 15, 1978, provided it acted before that date.

We conclude that it was error to vacate the 1978 modification and to withhold enforcement of the decree as modified.

Reversed.

Caldecott, P. J., and Poché, J., concurred.