[Civ. No. 43575. Second Dist., Div. Five. July 11, 1974.]

GERRY ANN TILGHMAN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WALTER W. TILGHMAN, Real Party in Interest.

600

## COUNSEL

Dryden, Harrington & Swartz, Miles J. Rubin and Peter Abrahams for Petitioner.

No appearance for Respondent.

Callister & Callister and J. Keith McGregor for Real Party in Interest.

## OPINION

**HASTINGS, J.**—This is a proceeding in certiorari to review an order of the Superior Court of Los Angeles County refusing to adjudge petitioner's former husband in contempt for failure to make spousal support payments.

FACTS

An interlocutory judgment of dissolution of the marriage between Gerry Ann Tilghman, petitioner (wife), and Walter W. Tilghman, real party in interest (husband), was rendered on June 12, 1970. As part of this interlocutory judgment the court approved a marital settlement agreement entered into between the parties on January 1, 1970. On December 30, 1970, a final judgment of dissolution was made and entered by the court, which incorporated and made binding all of the provisions of the interlocutory judgment. The parties and the trial court agreed that the marital settlement agreement was an "integrated agreement."[1]

Paragraph VI of the property settlement agreement provides for the support and maintenance of the wife.[2] The interlocutory judgment dissolving the marriage had attached to it an "Exhibit A" which was part of the court order. Pertinent parts are as follows: "The Marital Settlement Agree-

---

[1]We do not elaborate on the essentials of an "integrated agreement" because they are well known to attorneys practicing in the field of family law. For others that are interested we cite a few key cases: *DiMarco* v. *DiMarco,* 60 Cal.2d 387 [33 Cal.Rptr. 610, 385 P.2d 2]; *Plumer* v. *Plumer,* 48 Cal.2d 820 [313 P.2d 549]; *Messenger* v. *Messenger,* 46 Cal.2d 619 [297 P.2d 988]; *Dexter* v. *Dexter,* 42 Cal.2d 36 [265 P.2d 873]; and *Adams* v. *Adams,* 29 Cal.2d 621 [177 P.2d 265].

[2]VI. SUPPORT AND MAINTENANCE OF WIFE:

Commencing January 1, 1970, the Husband shall pay to the Wife as and for her support and maintenance the sum of ONE THOUSAND SEVEN HUNDRED DOLLARS ($1,700.00) per month. On December 1st of each year, Husband shall pay to the Wife an additional sum of One Thousand Dollars ($1,000.00). The Parties acknowledge that Husband presently has heavy obligations to retire certain indebtedness, and may be in arrears in making the support payments to Wife herein provided. Although support payments from Husband to Wife shall accrue at the rate of One Thousand Seven Hundred Dollars ($1,700.00) per month, it is agreed between the Parties that Husband shall not be deemed in default for this payment provided that he pays not less than Seven Hundred Dollars ($700.00) per month of his support obligation to Wife during the months of January and February, 1970, not less than One Thousand Four Hundred Dollars ($1,400.00) per month of his support obligation to Wife during the months of March through May, 1970. inclusive, thereafter pays the sum of One Thousand Seven Hundred Dollars ($1,700.00), or more, per month on the first day of each succeeding calendar month, and completely pays all arrearages in full to Wife on or before December 31, 1970.

After both of the said minor children reach majority and no further child support payments are payable by Husband to Wife, then at such time, Husband shall increase the support payments to Wife by ONE HUNDRED AND FIFTY DOLLARS ($150.00) per month, so that after both children reach majority; Husband shall pay TWO THOUSAND DOLLARS ($2,000.00) per month to Wife for her life. As additional support, Husband shall pay all medical expenses of Wife except for psychiatric bills. The support provisions of this paragraph shall not be subject to change by any Court, and shall remain an obligation of Husband whether or not there is any subsequent Divorce between the Parties and whether or not Wife shall remarry.

ment between the parties dated January 1, 1970, is approved. . . . Respondent shall pay to petitioner for her support, the sum of $1,700.00 per month payable on the first day of each month commencing July 1, 1970 plus an additional sum of $1,000.00 payable annually on December 1 of each year. After both of said minor children reach maturity and no further child support payments are payable by respondent to petitioner, husband shall increase support payments to wife by the amount of such child support payments so that after both children reach majority respondent shall pay petitioner the sum of $2,000.00 per month for her lifetime. As additional support, respondent shall pay to petitioner all medical expenses of said children during their minority, and all medical expenses of wife except for charges for psychiatric care. The community property of the parties has been divided as provided in the Agreement. . . ."[3]

The court's order did not include the last sentence in paragraph VI of the property settlement agreement which provided that payments were nonmodifiable and would continue after wife's remarriage.

On July 11, 1973, on wife's petition, the superior court issued its order to show cause and declaration in re contempt. The petition alleged that husband was behind in spousal support in the sum of $26,500. The hearing on the petition was held on July 31, and August 1, 1973. On November 19, 1973, the court made its order and ruled: "[T]he order for spousal support contained in the Interlocutory Judgment incorporated a non-modifiable, integrated Property Settlement Agreement as it pertains to spousal support, which is a contractual obligation, therefore not enforceable by contempt, since it does not constitute a separate law imposed duty."

## DISCUSSION

California decisional law has long played a predominant role in the convoluted field of the integrated property settlement agreement. Many of the decisions concern the right of the court to use its contempt power to enforce spousal support payments. The decisions have been controversial and often challenged, and it was appropriate that the California Legislature, urged on by resolutions of the State Bar, in 1967 passed an amendment to former Civil Code section 139[4] (now embodied in §§ 4811 and 4380) that seeks to clarify the confusion that existed. Briefly, the theory of the integrated agreement is that it is a negotiated contract between

---

[3]The portions deleted from said exhibit pertain to child support and additional support to wife in the form of premium payments on life insurance.

[4]Unless otherwise stated, all code section references are to the Civil Code.

husband and wife providing for simultaneous settlement of support, mainte-
nance and property rights. Often the key provisions are intentionally or
unintentionally entwined. Now, and prior to the above legislation, gen-
erally speaking an agreement not tainted by fraud or compulsion is bind-
ing on the court. (*Adams* v. *Adams, supra,* 29 Cal.2d 621, 624.) Orig-
inally, even where support payments were nonmodifiable, they could be
enforced by contempt if ordered by the court. (*Miller* v. *Superior Court,*
9 Cal.2d 733, 738 [72 P.2d 868].) Then, in 1957, our Supreme Court
decided *Bradley* v. *Superior Court,* 48 Cal.2d 509 [310 P.2d 634], and
said on pages 521 and 522: "But where the parties bargain with each
other and agree that the terms of their contract shall thereupon and thence-
forth grant, delimit and exclusively define their respective rights and obli-
gations *inter se,* then it is to the contract alone, and to conventional civil
proceedings for the enforcement of contract rights, that they must look for
a remedy in the event of breach. Inclusion of such a contract in a judg-
ment of divorce may furnish a basis for subsequent proceedings leading to
issuance of a writ of execution but cannot support a commitment to im-
prisonment for failure to pay the judgment debt. . . .

"We are satisfied that the better view is that payments provided in a
property settlement agreement which are found to constitute an adjust-
ment of property interests, rather than a severable provision for alimony,
should be held to fall within the constitutional proscription against im-
prisonment for debt. That is, if the obligation sought to be enforced is
contractual and negotiated, as distinguished from marital and imposed
by law, even though the contract relates to marriage obligations, the
remedy must be appropriate to the right asserted. Payments which fall
into the category of law-imposed alimony or separate maintenance are
based upon the statutory obligation of marital support, may be modified
by the court upon a proper showing, ordinarily terminate with the death
of either party, and may properly be held not to constitute a 'debt' within
the meaning of the constitutional provision. No such case for special ex-
emption from the constitutional proscription can be made where the pay-
ments represent the result of a bargain negotiated by the parties in adjust-
ment of their respective interests, and any implications to the contrary
which may be found in the following cases are disapproved. [Citations.]"

Justice Traynor filed a dissent in *Bradley,* arguing in part on page 523:
"The majority opinion concedes that an alimony award based on the
agreement of the parties is enforcible by contempt [citation] since it is
sufficiently related to the statutory duty of support incident to the marriage
relationship as to be outside the constitutional prohibition of imprisonment
for debt. (Cal. Const., art. I, § 15.) Rights and duties with respect to

property growing out of the marriage relationship and crystallized in a court order are likewise outside the scope of that provision. Such an order has not less a special character because it is based on an agreement of the parties than an alimony award based on such an agreement."

Shortly thereafter, the court reaffirmed its decision, and even enlarged it, to include integrated child support payments in *Plumer* v. *Superior Court*, 50 Cal.2d 631 [328 P.2d 193]. For this reason, the two cases are often cited together. Justice Traynor also dissented in *Plumer*.

The *Bradley* and *Plumer* decisions received more criticism than praise from members of the bar and legal academicians. The primary objection was that remedy by contempt is the only practical means of enforcing support payments in many instances. Further, by eliminating it as a weapon for collection, it reduces the wife's bargaining power during negotiation stages. Accordingly, organized support to change the decisional law by legislative action was mounted, and in 1967 the Committee of the State Bar of California sponsored an amendment to section 139 of the Civil Code.[5]

Section 139 as amended became law the same year. It has now been included verbatim in California's Family Law Act in two Civil Code sections, namely 4811 and 4380, that became law on January 1, 1970.

---

[5]"This proposal had its origin in 1963 State Bar Conference Resolutions 22, 40 and 61. Legislation was introduced in 1965 (AB 50 and AB 227) and was sent to interim study; those bills were not sponsored by the State Bar. After study and report by the Committee on the Administration of Justice, the Committee on Family Law, and a special Conference Committee, the Board of Governors of the State Bar of California placed this measure on the 1967 Legislative Program in August, 1966.

"This bill does two things: 1) It permits the enforcement of all support orders by contempt; and 2) It provides that all support orders will survive bankruptcy.

"Everyone agrees that one of the most effective means of enforcing support orders is the remedy of contempt; however, contempt is not now an available remedy for a support order contained in an integrated property settlement agreement. The reason is that such agreements are considered contractual, and enforcement by contempt would fall within the constitutional prohibition against imprisonment for debt. (*Bradley* v. *Superior Court*, 48 Cal.2d 509 (1957). This is true even if the agreement is merged in the decree, the payments are modifiable and refer to child support. (*Plummer* [sic] v. *Superior Court*, 50 Cal.2d 631 (1958); *Hull* v. *Superior Court*, 54 Cal.2d 139 (1960)."

(From material prepared by Herbert E. Ellingwood, Legislative Representative, State Bar of California, used to obtain enactment of the bill that eventually became the amendment to section 139).

Here we are concerned only with section 4811, subdivisions (b) and (c), and section 4380.[6]

In essence section 4811, subdivision (b) provides that support provisions in an integrated agreement are deemed separate from property provisions and are law-imposed. The support provision can be non-modifiable if the parties agree. Section 4380 authorizes the use of contempt proceedings to enforce the order.

The trial court in the case before us based its ruling on the premise that *Bradley* and *Plumer* have not been overruled. The practical effect of this ruling is that said sections are unconstitutional because the two quoted cases proclaim the constitutional principle that a person cannot be jailed for a debt. (Cal. Const., art. I, § 15.) The constitutionality of said sections as applied to this problem is the sole issue facing us.

## ARGUMENT

Property settlement agreements are drawn in a variety of ways. *Adams* v. *Adams, supra,* 29 Cal.2d 621, lists three principal categories. They are: (1) contracts in which the support and maintenance provisions are separable from the provisions that divide the property; (2) contracts in which the support and maintenance provisions are not in the nature of alimony, but are part of the division of property; and (3) contracts in which the wife waives all support and maintenance, or all support and maintenance except as provided in the agreement, in consideration of receiving a more favorable division of the community property. These agree-

---

[6]Section 4811 provides in pertinent parts: "(b) The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreements relating to property. All orders for the support of either party based on such agreement shall be deemed law-imposed and shall be deemed made under the power of the court to make such orders. The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order, except as to any amount that may have accrued prior to the date of filing of the notice of motion or order to show cause to modify or revoke, and except to the extent that any written agreement, or, if there is no written agreement, any oral agreement entered into in open court between the parties, specifically provides to the contrary.

"(c) This section shall be effective only with respect to property settlement agreements entered into on or after January 1, 1970, and shall not be deemed to affect agreements entered into prior thereto, as to which the provisions of Chapter 1308 of the Statutes of 1967 shall apply."

Section 4380 provides: "Any judgment, order, or decree of the court made or entered pursuant to this part may be enforced by the court by execution, attachment, the appoinment of a receiver, contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary."

ments, regardless of category, often are only *approved* by the court. It makes no difference whether spousal award provisions are separate. The court does not *order* all or certain provisions therein carried out, nor are they merged by reference into the divorce decree. Prior to the 1967 amendment to section 139 mere "approval" of an extrinsic agreement was not sufficient to give the court power to enforce the spousal support provision by contempt. (*Miller* v. *Superior Court, supra,* 9 Cal.2d 733, 737.) A clear and specific order was required. ■ The amendment to section 139 and section 4811, subdivision (b) did not change the rule. The pertinent language therein says, "[a]ll orders for the support of either party *based on such agreement* shall be deemed law-imposed. . . ." (Italics added.) The present law thus envisions some form of court order and not just approval of the agreement if enforcement through contempt proceedings is sought. Where the agreement contains property and spousal support provisions that are clearly severable and the entire agreement is merged into the divorce decree by incorporation, or the support provision is lifted therefrom and recited in the court's own order, the severable spousal support provision may be enforced by contempt. Other variations are possible where it is clear that the provisions are severable *and* court ordered.[7] It is the complex integrated agreement (where the property settlement provisions and spousal support provisions are commingled) that raises the issue of the court's right to use contempt proceedings to enforce payments. This is the dual nature concept of the integrated agreement discussed in *Dexter, supra,* 42 Cal.2d 36, *Bradley,* and *Plumer,* et al., and commented on later in this opinion. The spousal support payments include sums for the statutory obligation of marital support (not considered a debt) and adjustment of community property rights (generally considered a debt.)[8]

The spousal support payments in the present case probably include both types of payments; however, the interlocutory decree included a verbatim portion of the spousal support provisions, and by eliminating other portions, created a hybrid situation. The community property of the parties consisted of two cars, household furniture and fixtures, and the husband's medical practice. Wife received one car and the household furniture and fixtures. Husband was given the other car and the medical practice. The record is silent on the value of the assets. ■ Wife

---

[7]The support provision is modifiable by the court unless the agreement, or oral stipulation by the parties in court, provides otherwise. (Civ. Code, § 4811, subd. (b).)

[8]The possibility of modifying an order for support based on this type of agreement is also covered by Civil Code section 4811, subdivision (b).

would be entitled to one-half of the value of the goodwill of the medical practice, the fixtures and equipment; however, she has no community property claim to husband's future earnings because they are his separate property after the dissolution of marriage. (*In re Marriage of Fortier,* 34 Cal.App.3d 384, 388 [109 Cal.Rptr. 915].) She is also entitled to law-imposed marital support from his earnings if her needs require it. Although paragraph VI refers only to spousal support payments, it is likely they are dual in nature embodying marital support and community property adjustment payments.[9]

When the *Bradley* court considered this type of integrated agreement, it did not have any codified law similar to sections 4811 and 4380, expressing the legislative intent that spousal support payments should be deemed court-imposed and, therefore, not a debt within the meaning of the Constitution. It was *Bradley* of course that induced the 1967 amendment to section 139. ■ When the intent of the Legislature is clear, it is incumbent on the courts to find the law constitutional if the terms are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution. (*People* v. *Davis,* 68 Cal.2d 481, 483-484 [67 Cal.Rptr. 547, 439 P.2d 651], citing *County of Madera* v. *Gendron,* 59 Cal.2d 798, 801 [31 Cal.Rptr. 302, 382 P.2d 342].) With this rule in mind, it would have been entirely consistent for the *Bradley* court to have found sections 4811 and 4380 constitutional based on its decision in *Miller* v. *Superior Court, supra,* 9 Cal.2d 733.

The present code sections emphasize the "law-imposed" support characteristic. The rationale is that, although integrated support payments may be contractual, they directly satisfy the legal obligation of marital support and are analogous to "law-imposed" alimony.[10] This was the concept as stated in *Miller.* The husband in *Miller* was found guilty of contempt for failure to pay alimony. He claimed he was not subject to contempt proceedings because his obligation rested on a negotiated property settlement agreement. The court on page 739 stated: "The state has an interest in the support of the wife, lest she become a public charge. A property settlement agreement where the wife is the innocent party and hence entitled to alimony represents an effort by the parties to fix the amount to be paid by the husband as a substitute for, and in compensation for, the marital support which the wife loses through no fault of her own, *and in some cases, also in lieu of a share in the community property which the*

---

[9]While we have used "wife" throughout, we do not mean to preclude the "husband" if proper circumstances exist.

[10]"Espousal" or "spousal support" terminology has. under the Family Law Act, replaced the word "alimony," although the same are interchangeable.

*wife who procures a divorce is by statute entitled to have set aside to her. . . .* The basis of the obligation in the case of an approval and order to pay, as in the case of an award of allowance not based on agreement, is the statutory obligation of marital support which is not a 'debt' within the meaning of the constitutional provision. We are of the view that the order to pay a monthly allowance, even though in accordance with the agreement of the parties, *is not a 'debt' within the meaning of the constitutional prohibition.*" (Italics added.)

Legal writers have pondered the apparent inconsistencies between *Miller* and *Bradley*. In an article titled *Family Law: Order Out of Chaos* ((1965) 53 Cal.L.Rev. 121), the author, Professor Armstrong,[11] commenting on the two cases, writes at page 148: "In searching for a probable, or even possible, explanation of the *about face* decision in *Bradley,* it occurred to the writer of these comments that the split on the court which began with the *Flynn* case,[12] became four to three with the *Foust* case,[13] and thereafter persisted as a pattern, may have played a part. A continuous division on the same subject throughout a series of cases cannot be a comfortable situation for a review court. The explosive *Bradley* decision perhaps cleared the air. If so, it was at the cost of crippling a useful unique institution, for it is beyond argument that execution is not a practical method of enforcing the obligation to make recurring support payments. It follows also that because a challenger of its doctrine had to face a majority of six members of the supreme court, the case eliminated for the time being at least, the likelihood of an opportunity for the court to reconsider the constitutional theory which it had espoused in *Bradley*. There is some hope that it is only 'for the time being' in view of the 1963 case of *DiMarco* v. *DiMarco*.[14]"

The writer of a Comment, *Integrated Property Settlement Agreements: Constitutional Problems with the 1967 Amendment to California Civil Code Section 139* (1967) 8 Santa Clara Law. 84, while agreeing *Bradley* contradicted *Miller,* stated the comparison differently. On page 92, the author states: "However, *Bradley* itself was a contradiction of the law as it had been established twenty years earlier in *Miller* v. *Superior Court. . . .*

[11]Barbara N. Armstrong, LL.D., professor of law, emeritus, University of California, Berkeley.
[12]*Flynn* v. *Flynn,* 42 Cal.2d 55 [265 P.2d 865].
[13]*Foust* v. *Foust,* 47 Cal.2d 121 [302 P.2d 11].
[14]*DiMarco* v. *DiMarco, supra,* 60 Cal.2d 387.

"It is significant that the court in *Bradley* did not expressly overrule *Miller*. Instead, *Miller* was distinguished. *Bradley* determined that the holding in *Miller* allowed *support* payments to be enforced through contempt. The court then concluded that, since it was determined in the lower court that the payments in *Bradley* were *not* for *support, Miller* did not apply.

"Aside from the validity of the distinction, it is notable that *Bradley* agreed with *Miller,* that if payments are determined to be in satisfaction of the marital obligation of *support,* they will be enforceable by contempt. Thus, *Bradley* implied that if the payments (in *Bradley*) had been for *support* they would have been enforceable by contempt. Therefore, if it is determined that certain payments are in satisfaction of the marital obligation of *support,* they will be enforceable by contempt according to *Bradley, Miller,* and section 139. Accordingly, throughout section 139 reference is made only to *provisions for support* or *orders for support,* providing that only these are enforceable by contempt."

Professor Armstrong found encouragement in *DiMarco* because, beginning with *Dexter,* Justice Traynor consistently emphasized the dual nature of the support payments in an integrated agreement. This concept was important in his dissents in *Bradley* and *Plumer,* where after quoting *Dexter* on this dual characteristic he states in *Bradley* on page 524: "So long as the wife has not remarried, the characteristics of the support and maintenance obligation remain and alone justify enforcement by contempt. Such a rule is implicit in the *Miller* case . . . ."

It was Professor Armstrong's hope that the court, in reaffirming the dual nature concept, will in light of section 4811, subdivision (b) again emphasize the marital support concept instead of the property adjustment theory. We conclude this expectation is justified.

Section 4811, subdivision (b) separates the spousal support from the property provisions. Only the orders relating to support are enforceable by contempt. The section accomplishes its goal by accentuating the public policy aspect that requires marital support payments. The marital agreement is a creature of the marital relationship and is outside the scope of the usual debtor-creditor situation envisioned by the Constitution. For example, *In re Trombley,* 31 Cal.2d 801, on page 809 [193 P.2d 734], states, "The historical background of section 15 of article I and similar constitutional guaranties of other states clearly shows that the provisions were adopted to protect the poor but honest debtor who is unable to pay his debts, and were not intended to shield a dishonest man who takes an

unconscionable advantage of another." The Supreme Court of the State of Washington (another community property state) on a related issue[15] recognizes a distinction by saying, "We believe the constitutional prohibition against imprisonment for debt relates to run-of-the-mill debtor-creditor relationships arising, to some extent, out of tort claim, but principally, out of matters basically contractual in nature. In such cases the judgment of the court is merely a declaration of an amount owing and is not an order to pay. Problems of domestic relations involving alimony, support payments, property settlements, together with court orders in connection therewith, do not normally fall into the debtor-creditor category." In sum the above arguments are persuasive that a debt for spousal support is not within the constitutional concept that protects this type of debtor. Adding weight to this is the requirement that the court must find that the obligor has the ability to pay and wilfully refuses. This condition not only gives added protection to the debtor, it also determines he is not in the class the Constitution seeks to protect if found in contempt of court.

Decisional law since the passage of the amendment to section 139 further supports our conclusion. In *Garrett* v. *Garrett,* 258 Cal.App.2d 407, 416 [65 Cal.Rptr. 580], the court refers to the 1967 amendment to section 139 and acknowledges it makes child and spousal support payments law-imposed obligations that may be enforced by contempt proceedings, even though such support was provided for in an integrated agreement.

In *In re Fontana,* 24 Cal.App.3d 1008 [101 Cal.Rptr. 465], the court order made on the dissolution of marriage required the husband to make payments on an automobile awarded to his former wife. The court made a distinction between spousal support payments and car payments and held the latter to be a debt and not enforceable by contempt of court. However, in analyzing the problem, the court said on page 1010: "Petitioner contends that to imprison one for failure to make payments in accordance with a property settlement agreement pursuant to a court order would violate article I, section 15 of the California Constitution, which prohibits imprisonment for debt. Real party in interest (hereinafter referred to for convenience as 'respondent') contends that newly enacted Civil Code section 4380 makes this contention untenable.

"The pre-1967 rule was that an agreement which ordered a spouse to make payments to the other spouse, but which was found to constitute an adjustment of property interests rather than several provisions for support, could not be enforced by contempt. (*Bradley* v. *Superior Court* (1957) 48 Cal.2d 509, 522 [310 P.2d 634].) However, this rule was changed

---

[15]See *Decker* v. *Decker,* 52 Wn.2d 456, 458 [326 P.2d 332, 333].

in 1967 when section 139 of the Civil Code was amended to provide that support provisions found in an integrated property settlement agreement could be enforced by contempt. (2 The Family Lawyer (Cont.Ed.Bar 1969 Supp.) p. 85.) . . . Thus, even though the interlocutory judgment appears to contain an integrated agreement, any support provisions contained therein can be enforced by contempt.

"Only spousal support and child support orders, and orders for necessary attorney's fees and costs, may be enforced by contempt proceedings. These matters are not considered debts within the constitutional guaranty against imprisonment for debt. (*In re Hendricks* (1970) 5 Cal.App.3d 793, 796 [85 Cal.Rptr. 220].)"

■ Turning to the case at bar, paragraph VI of the settlement agreement is entitled, "Support and Maintenance of Wife" and all of the provisions contained therein are directed to this singular purpose. Nothing else in the paragraph detracts from this theme. It clearly expresses the parties' intentions, and for whatever other purpose the payments are made, if any, the paragraph over-accentuates the marital support obligation. The wording could not be more appropriate in expressing the concept of section 4811, subdivision (b). However, our analysis cannot end with the agreement. Exhibit A of the court's order states that the marital settlement agreement is approved. Had the interlocutory judgment gone no further, this agreement would have remained merely a contract between the parties. The spousal support provision would be unaffected by section 4811, subdivision (b) because of the absence of a court order; thus unenforceable by contempt proceedings. But the court order continued and cited verbatim the major portion of paragraph VI cited earlier. Significantly, the order did not include the portion of the paragraph providing that payments should continue after remarriage. The record is silent concerning the court's reason for eliminating this sentence, but it is compatible with the theory stated earlier that so long as the wife has not remarried, the characteristics of the support obligation remain and alone justify enforcement by contempt.[16] It is conceivable that either the parties agreed to the change to comply with the intent of section 4811, subdivision (b), or that the court made the severance on its own motion for the same reason. In any event the reason is immaterial—the order carries out the mandate of section 4811, subdivision (b). Based on the court order in this case, we conclude for the reasons stated earlier that sections 4811 and 4380 are constitutional and permit enforcement by contempt proceedings of the spousal support obligation that originated in the integrated agreement.

---

[16]The facts peculiar to this case determine our decision, therefore we do not add dictum to the opinion by discussing the effect of the court order if the eliminated sentence had remained.

■ Before concluding this opinion, we note that the trial court *approved* the agreement, and then incorporated from the agreement in its decree most of paragraph VI, but omitted the provision that the spousal support could not be modified. We raise this point to dispose of any misconception that the trial court, by partial severance, has the power, after approving the agreement, to make the payments modifiable without permission of the parties. Section 4811, subdivision (b) specifically prevents modification when the parties so agree. The trial court, pursuant to said section, had the power to sever the support payments from the agreement, but would lack jurisdiction to modify them at a later date. Just as there is a sound public policy for permitting contempt proceedings to enforce support payments, there is also strong justification for non-modifiable provisions. Except for child support payments, the husband is entitled to the security of certainty on spousal support payments so that he can plan his affairs in the assurance that they could not be increased by the court.

■ We do not agree with the trial court's statement that, for an order to be "law-imposed," it must also be modifiable when the court deems modification justified. Our Supreme Court put this argument to rest in 1937 when it decided *Miller* and acknowledged contempt proceedings were available to enforce contractual alimony provisions in a settlement agreement, even though the court could not modify the provision.

The order is annulled.

Kaus, P. J., and Stephens, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied October 2, 1974.