[Civ. No. 44641. Second Dist., Div. Five. May 14, 1975.]

In re the Marriage of NANCY H. and NORVELL H. HAWKINS.
NANCY H. HAWKINS, Respondent, v.
NORVELL H. HAWKINS, Appellant.

210

**COUNSEL**

Bertram M. Flagel for Appellant.

Shield & Smith and Theodore P. Shield for Respondent.

**OPINION**

**ASHBY, J.**—Appeal from denial of appellant's motions to modify spousal support and to set aside portion of prior order re nonmodifiability of spousal support on grounds of extrinsic fraud.

Appellant Norvell H. Hawkins (Husband) and respondent Nancy H. Hawkins (Wife) were approximately 50 years old at the time the interlocutory judgment of dissolution was entered. They had been married for more than 27 years and were the parents of four children. Husband was earning approximately $3,000 a month at the time the petition for dissolution was filed on January 21, 1972. The matter was set for hearing on August 25, 1972, as a contested nonjury matter. Although Husband was present in court, the matter was heard as a default. During the time between the filing of the petition for dissolution and the hearing, the parties negotiated a marital settlement agreement which was received in evidence and incorporated into the interlocutory judgment of dissolution which became final on November 15, 1972.

The agreement provided in pertinent part as follows:

"Husband agrees to pay to Wife for her support $800.00 per month, payable in advance on the first day of each month beginning September 1, 1972, and continuing until the death of Husband, the death of Wife, or

the remarriage of Wife. The support payments of $800.00 per month are subject to being increased in an amount equal to 20% of any increase in Husband's annual income in excess of $28,000 per year. However, it is agreed that in no event shall any such increase of the monthly support payments exceed the sum of $200.00 per month, it being the intent hereof that the monthly payments for support shall not exceed the sum of $1,000.00 per month. Husband's income for purposes of this computation shall mean earned income such as wages, salaries, bonuses from any source, but shall not include income from capital gains, dividends or interest. To effectuate this provision Husband agrees to furnish Wife with a copy of that portion of his income tax return each year which reflects the income referred to herein. *The requirements contained herein for payments for the support of Wife shall not be modifiable on any ground.*

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"This agreement has been negotiated and prepared by Theodore P. Shield, the attorney for Wife, who advised and informed Husband that he acted solely as counsel for Wife and does not advise or represent Husband in this matter. Husband has consulted with counsel of his choice and has carefully read this agreement, fully understands its terms, and willingly signs it." (Italics added.)

Because Husband was delinquent in making payments, Wife, on December 4, 1973, filed an "Order to Show Cause and Declaration re Contempt." On December 11, 1973, Husband filed "Notice of Motion re Modification." Both matters were heard on December 19, 1973, and at the conclusion of the hearing the court held Husband to be in contempt for failure to comply with the terms of the support order. Subsequently on January 25, 1974, Husband's motion for modification of judgment relating to spousal support was denied.

On February 13, 1974, Husband filed a "Notice of Motion for Order to Set Aside Portion of Prior Order re Non-Modifiability of Spousal Support on Grounds of Extrinsic Fraud." This motion was heard on February 28, 1974, and was denied by the court. This appeal is from the orders entered on January 25 and February 28, 1974.

Husband's first contention is that the order of the trial court that the support agreement is not modifiable by the court is contrary to public policy and the court erred in denying the order for modification. This contention is without merit.

The order for spousal support is governed by Civil Code section 4811, subdivision (b). That section provides: "The provisions of any agreement for the support of either party ʾshall be deemed to be separate and severable from the provisions of the agreement relating to property. All orders for the support of either party based on such agreement shall be deemed law-imposed and shall be deemed made under the power of the court to make such orders. The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order, except as to any amount that may have accrued prior to the date of filing of the notice of motion or order to show cause to modify or revoke, and *except to the extent that any written agreement,* or, if there is no written agreement, any oral agreement *entered into in open court between the parties, specifically provides to the contrary.*" (Italics added.)

Husband does not contend that section 4811, subdivision (b), is unconstitutional. Husband alleges that it is against public policy; however, he cites no cases which consider the application of the section to orders for support. All the cases cited by Husband[1] involve support orders under Civil Code section 4801 which applies to judgments and orders made by the court in the absence of an agreement between the parties. Those cases therefore are not in point.

The provisions of section 4811, subdivision (b), are not against public policy. As we said in *Tilghman* v. *Superior Court,* 40 Cal.App.3d 599, 613 [115 Cal.Rptr. 195]: ". . . we note that the trial court *approved* the agreement, and then incorporated from the agreement in its decree most of paragraph VI, but omitted the provision that the spousal support could not be modified. We raise this point to dispose of any misconception that the trial court, by partial severance, has the power, after approving the agreement, to make the payments modifiable without permission of the parties. Section 4811, subdivision (b), specifically prevents modification when the parties so agree. The trial court, pursuant to said section, had the power to sever the support payments from the agreement, but would lack jurisdiction to modify them at a later date. Just as there is a sound public policy for permitting contempt proceedings to enforce support payments, there is also strong justification for

---

[1]*Dunning* v. *Dunning,* 114 Cal.App.2d 110 [249 P.2d 609]; *Hough* v. *Hough,* 26 Cal.2d 605 [160 P.2d 15]; *Weisz* v. *Weisz,* 19 Cal.App.3d 676 [97 Cal.Rptr. 18]; *In re Marriage of Dennis,* 35 Cal.App.3d 279 [110 Cal.Rptr. 619].

nonmodifiable provisions." (Italics in original. See also *Mandanis* v. *Mandanis,* 8 Cal.App.3d 579 [87 Cal.Rptr. 387].)[2]

The parties to a property settlement are entitled to relinquish the possibility of a potentially more beneficial support order in exchange for certainty of their rights and obligations. Because of that certainty, both can better plan their affairs and adjust their lives to the new circumstances created by the termination of a long marriage. ˎ

█ Husband's final contention is that the nonmodification provision of the marital settlement agreement was obtained through extrinsic fraud and therefore should be voided. This contention also has no merit.

The basis of Husband's allegation is his claim that he relied on representations of the attorney for Wife. In his declaration in support of the motion to modify support, he stated that in negotiating the settlement agreement he had relied on statements by Wife's attorney that the court might well award wife $1,250 a month payable until her death or remarriage and further that such an order normally and routinely would be nonmodifiable.[3]

In his declaration in support of Wife's opposition to Husband's motion to modify support, Wife's attorney denied giving Husband any legal advice and stated: "At no time did I ever tell Mr. Hawkins that a Court would normally and routinely order him to pay $1,250 or any other sum for spousal support and at no time did I tell him or say anything to lead him to believe that a Court would make an order for spousal support non-modifiable. Any statement of Mr. Hawkins to that effect is untrue. [¶] On the contrary in discussing the provisions for spousal support, I told him that both parties would be taking a chance on what the Court might

---

[2]The agreement in *Mandanis* contained very complex provisions relating to spousal and child support which provided for reductions under certain circumstances and for no increases in such payments. The wife sought to have the agreement modified. Even though the agreement was entered into prior to section 4811, subdivision (b), the Court of Appeal upheld the agreement and the validity of the nonmodification of support provision.

[3]Husband's declaration is inconsistent with the following language of the support agreement which he personally signed:

"This agreement has been negotiated and prepared by Theodore P. Shield, the attorney for Wife, who advised and informed Husband that he acted solely as counsel for Wife and does not advise or represent Husband in this matter. Husband has consulted with counsel of his choice and has carefully read this agreement, fully understands its terms, and willingly signs it."

order and that this chance could be eliminated by the parties making their own agreement. I told him that Mrs. Hawkins was interested in not having the payments ever go below $800 and he indicated that he did not think they should ever go over $1,000 per month, and the agreement to that effect was therefore included in the Marital Settlement Agreement as executed by the parties."

The trial court resolved the conflicts in the declarations in favor of Wife.[4] We will not reweigh the evidence nor disturb that determination on appeal. (*Deyl* v. *Deyl*, 88 Cal.App.2d 536, 543 [199 P.2d 424]; *Cameron* v. *Cameron*, 110 Cal.App.2d 258, 260 [242 P.2d 408]; *Baratti* v. *Baratti*, 109 Cal.App.2d 917, 922 [242 P.2d 22].)

The orders are affirmed.

Kaus, P. J., and Hastings, J., concurred.

On June 11, 1975, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied July 9, 1975.

---

[4]Prior to ruling adversely to Husband, the court gave the following indication of its incredulity in regard to Husband's claimed reliance:

"THE COURT: You are telling me then that this 50-year-old man who is the vice president of a computer corporation with extensive business goes to his wife's attorney and relies on what his wife's attorney says?"