[Civ. No. 46208. Second Dist., Div. Five. Dec. 22, 1975.]

In re the Marriage of ROSALIE JEAN and
WILLIAM MARIO CARLETTI.
WILLIAM MARIO CARLETTI, Respondent, v.
ROSALIE JEAN CARLETTI, Appellant.

**COUNSEL**

Julian S. Gould and Martin N. Refkin for Appellant.

Julius A. Dix for Respondent.

## OPINION

**STEPHENS, J.**—This is an appeal from an order setting aside an interlocutory judgment of dissolution.

Rosalie and William Carletti had been married for over 20 years when, in September 1972, William (respondent) filed for a dissolution. In order to equally divide their community property, both parties engaged in extensive discovery proceedings, which included depositions, interrogatories, and an examination of the books and records of respondent's business, GM Dealers Supply Company, Inc. (GM), in which he was an officer, director, and managing partner.[1] Subsequent to discovery, the parties stipulated in open court to a division of the property, and such stipulation was incorporated into the trial court's interlocutory judgment of dissolution entered on August 21, 1973.

Pursuant to the order of dissolution and in accordance with the stipulation, appellant was awarded the family residence, together with all household furniture and fixtures. Respondent was ordered to pay all existing encumbrances; to maintain a policy of life insurance for $50,000, with appellant as beneficiary; to pay to appellant the sum of $10,000; and to pay appellant's attorney's fees. Further, respondent was directed to pay spousal support of $590 monthly until appellant's death or remarriage, whichever occurs first. Respondent was awarded all stock and interest in GM and in CWC Supply, Inc., as well as certain real property, and the parties' checking and savings accounts.

In November 1973, an audit of GM revealed that the company had been overvalued by $264,000. This discrepancy between the actual assets of the company and the value as reflected by the company's records existed at least since November 1972. In February 1974, both GM and CWC were forced to terminate their businesses. It does not appear nor does respondent contend that appellant had any knowledge of or involvement in the activities of the businesses. Faced with increasing debts and unable to maintain his support payments, respondent, on July 10, 1974, filed a motion to vacate the interlocutory judgment of dissolution and to modify the spousal support order. Following a hearing, the court granted respondent's motion and ordered the prior

---

[1]Respondent also had an interest in a company named CWC Supply, Inc.

interlocutory order vacated. After a denial of appellant's motion to reconsider, appellant filed this appeal.

Respondent seeks to sustain the trial court's judgment on the ground that because of a mistake in the valuation of the community property, there was no equal division of such property in accordance with Civil Code section 4800. However, in order to successfully challenge the court's interlocutory decree, respondent either had to appeal that court's order or, since no appeal was taken, he had to show that he comes within the provisions of Code of Civil Procedure section 473, which sets forth the proper method for challenges to the court's interlocutory decree. Under section 473, a court may "relieve a party . . . from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, . . . or excusable neglect," provided application for such relief is made within six months after the judgment or order is entered. Since respondent did not file his petition to set aside the judgment until July 10, 1974—over 10 months after the order was entered—it is clear that the court was without jurisdiction to set the judgment aside under section 473. (*Leupe* v. *Leupe,* 21 Cal.2d 145, 148 [130 P.2d 697].) Although not disputing this, respondent urges that because of the mistake in determining the value of his business, the interlocutory judgment should be set aside on equitable grounds. However, it has been established in a number of cases that a "final judgment of a court having jurisdiction over persons and subject matter can be attacked in equity after the time for appeal or other direct attack has expired only if the alleged . . . mistake is extrinsic rather than intrinsic." (*Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105]; see also *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13 [193 P.2d 728].) "Thus, equitable relief will be denied where it is sought to relitigate an issue involved in the former proceeding on the ground that allegations or proof of either party [were] fraudulent or based on mistake, but such relief may be granted if the party seeking it was precluded by fraud or the mistake of the *other party* from participating in the proceeding or from fully presenting his case." (*Id.,* at p. 18; italics added.) In determining whether equitable relief of this kind should be granted, it is necessary to examine the facts of each case in "light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case." (*Id.,* at p. 19.) These principles are applicable to dissolution decrees which incorporate an agreement for alimony awards

and property settlements. (*Kulchar* v. *Kulchar,* 1 Cal.3d 467, 471 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].)

Thus, a court will grant equitable relief from a judgment where the moving party has demonstrated that because of extrinsic fraud or mistake he was denied an opportunity to fully present his case, or was kept in ignorance thereof, resulting in no true adversary proceeding. It is clear from the record before us that respondent has failed to adequately demonstrate the existence of extrinsic mistake. Respondent was not denied a meaningful opportunity to a full and fair hearing. Indeed, the extensive discovery proceedings that preceded the interlocutory judgment would weigh against any such claim by respondent. Any mistake in the valuation of respondent's businesses can only be attributed to his own negligence, and as such, relief will be "denied when the complaining party has contributed to the fraud or mistake giving rise to the judgment thus obtained." (*Kulchar* v. *Kulchar, supra,* 1 Cal.3d at p. 473; see also *Wilson* v. *Wilson,* 55 Cal.App.2d 421, 427 [130 P.2d 782].)

However, respondent argues that the property settlement agreement entered into was a contract and thus required mutual consent of the parties in order to be valid.[2] Since Civil Code section 1567 states that consent "is not real or free when obtained through . . . mistake," respondent maintains that no valid contract existed upon which the trial court could base its judgment. Respondent cites *In re Marriage of Nicolaides,* 39 Cal.App.3d 192 [114 Cal.Rptr. 56], for the proposition that where there exists mutual mistake in the execution of a property settlement agreement, an interlocutory decree incorporating the agreement may be set aside without the necessity of establishing extrinsic fraud or mistake. *Nicolaides* recognized, however, that such judgment "may properly be set aside or modified after the time for appeal or other direct attack has expired upon a showing of extrinsic fraud or mistake . . . ." (*Id.,* at p. 198.) In *Nicolaides,* the court did not discuss the issue of mutual mistake, nor does it appear that the issue was raised therein. As the court in *Kulchar, supra,* pointed out: "[A] mutual mistake that might be sufficient to set aside a contract is not sufficient *to set aside a final judgment.* The principles of res judicata demand that the parties present their entire case in one proceeding. 'Public policy requires that

---

[2]Although the court divided the community property and ordered spousal support payments on the basis of the parties' stipulation, it is clear that such a stipulation had the same force and effect as would a written property settlement agreement executed by the parties prior to trial. (*In re Marriage of Carter,* 19 Cal.App.3d 479, 488 [97 Cal.Rptr. 274].)

pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining all the facts. A rule which would permit the re-opening of cases previously decided because of error or ignorance during the progress of the trial would in a large measure vitiate the effects of the rules of res judicata.' " (*Kulchar* v. *Kulchar, supra,* 1 Cal.3d 467 at p. 472, quoting Rest., Judgments, § 126, com. a.) Therefore, the trial court was in error in sustaining respondent's motion to set aside the interlocutory judgment of dissolution.[3]

There remains to consider whether, on remand, the trial court may properly modify the spousal support order. In entering its interlocutory decree, the trial court incorporated the following portion of the stipulation: "It is further ordered that said $590 spousal support herein ordered to be paid shall not be subject to modification, either upward or downward, for any reason whatsoever, including, without limitation, any earnings of . . . Rosalie Jean Carletti, by means of gainful employment or otherwise, and . . . William Mario Carletti, Sr., has waived any claim or right thereto." Respondent contends that the "property settlement agreement" is nonintegrated and severable, and thus the court can, under Civil Code section 4801,[4] modify the support order in light of the changed circumstances of the parties.

Generally, where the parties intend that the support payments or alimony be made an integral part of the division of the property, the property settlement agreement will be considered integrated and nonseverable. (*Dexter* v. *Dexter,* 42 Cal.2d 36, 41-42 [265 P.2d 873]; *Plumer* v. *Plumer,* 48 Cal.2d 820, 824 [313 P.2d 549]; *Bradley* v. *Superior Court,* 48 Cal.2d 509, 518 [310 P.2d 634].) Where it is determined that the

---

[3]By deciding that no extrinsic mistake existed such as would allow the trial court to properly vacate its judgment, it is unnecessary to consider appellant's contention that the mistake was a result of respondent's neglect of his duty of management and control of the businesses.

[4]Civil Code section 4801 provides: "(a) In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment without interfering with the interests of the children of the parties in the custody of such spouse. The court may order the party required to make such payment of support to give reasonable security therefor. Any order for support of the other party may be modified or revoked as the court may deem necessary, except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke. The order of modification or revocation may be made retroactive to the date of filing of the notice of motion or order to show cause to modify or revoke, or to any date subsequent thereto."

agreement is integrated, it cannot be modified except upon consent of both parties. (*Plumer* v. *Plumer, supra,* at p. 824; *Puckett* v. *Puckett,* 21 Cal.2d 833, 840 [136 P.2d 1].) While it may be assumed that the agreement here was nonintegrated and thus subject to modification, it does not appear that Civil Code section 4801 is applicable. When this section is read together with Civil Code section 4811, subdivision (b), it becomes clear that section 4801 was intended to apply only to those situations where the parties have not entered into any agreement, either prior to or during the trial, leaving it to the discretion of the court to establish the amount, if any, of the support payments. (*In re Marriage of Hawkins,* 48 Cal.App.3d 208 [121 Cal.Rptr. 681].) Conversely, section 4811, subdivision (b) seems directly applicable in that it provides that "The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. All orders for the support of either party based on such agreement shall be deemed to be law-imposed and shall be deemed made under the power of the court to make such orders. The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order, except . . . *to the extent that* any written agreement, or, if there is no written agreement, *any oral agreement entered into in open court between the parties, specifically provides to the contrary.*" (Italics added.)

█  The stipulation of the parties, entered into in open court, clearly states that the support payments shall not be modified "for any reason whatsoever," and, as hereinbefore set forth, the trial court incorporated that stipulation in its order. Where the parties have so agreed, section 4811, subdivision (b), precludes modification of the support order. (*In re Marriage of Hawkins, supra,* 48 Cal.App.3d 208, at p. 213; *Tilghman* v. *Superior Court,* 40 Cal.App.3d 599, 613 [115 Cal.Rptr. 195].)

The judgment (order setting aside the interlocutory judgment and granting modification of support payments) is reversed. Costs to appellant.

Kaus, P. J., and Hastings, J., concurred.