Filed 6/21/23  Maddox v. Maddox CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| TINA A. MADDOX,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>    v.<br><br>SHERMAN C. MADDOX,<br><br>    Defendant, Cross-complainant and Appellant. | D079989<br><br><br><br>(Super. Ct. No.<br> 37-2018-00045856-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Workman Law and Christopher J. Workman for Defendant, Cross-complainant and Appellant.

Palmer Rodak & Associates, Matthew Eric Palmer and Layla Zad for Plaintiff, Cross-defendant and Respondent.

Defendant, cross-complainant and appellant Sherman C. Maddox appeals a judgment in favor of his former spouse, plaintiff, cross-defendant

and respondent Tina A. Maddox, following a bench trial on Tina's[1] complaint for quiet title, partition and "unjust enrichment" and Sherman's cross-complaint for elder abuse, slander of title, fraud and constructive trust. In its judgment, the court found Tina had 50 percent ownership of residential real property previously awarded to Sherman in connection with the parties' 2003 marital settlement agreement and divorce judgment, as well as $67,860 in rent owed to her by Sherman, in part finding that after the parties executed the settlement agreement, they reconciled and resided together, and entered into a new agreement with respect to the property that superseded their divorce judgment. In arguments detailed below, Sherman contends the court erred by its ruling, and also by rejecting his affirmative defenses and ruling against him on his cross-complaint. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

The parties were married in September 1983 and separated in April 2002. In January 2003, they entered into a marital settlement agreement

---

[1] We refer to the parties by their first names for convenience and not out of disrespect.

[2] We state the undisputed facts from the record or the trial court's statement of decision, and view other evidence in the light most favorable to Tina as the prevailing party. Sherman in his opening brief states the facts favorable to his position, contrary to settled appellate standards in reviewing factual findings in support of a judgment following a bench trial, the consequences of which we address below (see part III, *post*). As we also discuss below (part II, *post*), Sherman asserted numerous objections to the court's statement of decision, and he argues they preclude application of the doctrine of implied findings. But a court's failure to make a finding on a particular matter is harmless "unless the evidence is sufficient to sustain a finding in favor of the complaining party which would have the effect of countervailing or destroying other findings." (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 163.) Sherman does not address whether that is the case here.

2

(settlement agreement), which was incorporated into a judgment of dissolution. In part, the judgment awarded the family residence (the property) to Sherman. It terminated the parties' marital status as of June 8, 2003. Before their marital status terminated by operation of the judgment, Tina in March 2003 created a living trust and quitclaimed her record title in the property to that trust.

Thereafter, the parties did not live separate and apart, nor did they abide by the terms of the settlement agreement. Up until August 2009, they continued to live together as though they were married, shared expenses and jointly paid bills, and maintained a joint bank account into which Tina made deposits and Sherman's employer deposited his paychecks. Sherman had health insurance through Tina's employer until about 2008. Tina made house payments and paid insurance bills as well as other payments for Sherman's truck with Sherman's knowledge. She made payments toward Sherman's credit card balance.

In February 2004, Sherman and Tina reached an agreement to place Tina back on title to the property via a deed granting title to the property in Sherman, an unmarried man, and Tina, an unmarried woman, as joint

3

tenants.[3] They did so after discussing the matter and deciding that they would remain on title together. A few days before Sherman and Tina signed the February 2004 grant deed, Tina quitclaimed her interest in the property out of her trust and back to herself as an unmarried woman.

In May 2005, Tina and Sherman together signed another trust deed for the purpose of taking out a home equity line of credit so as to make improvements to the property.

At the end of August 2009, Tina left Sherman and moved out of the property after he committed an incident of domestic violence toward her and their daughter.

In November 2009, Tina via counsel sent Sherman a copy of the February 2004 grant deed, advising him of her position that she co-owned the property with him. In January 2010, Tina quitclaimed her interest in the property to herself for the purpose of breaking the joint tenancy relationship between her and Sherman. In 2015 and 2018, Sherman asked Tina to quitclaim her share of the property to him but she refused, as she wanted him to pay her rent from 2009, the time she moved out of the property.

---

[3]    The February 27, 2004 deed grants ownership of the property from "Sherman C. Maddox, and Tina A. Maddox, Trustee, Tina A. Maddox-2003 Trust, under Declaration of Trust dated March 19, 2003 . . . to Sherman C. Maddox, an unmarried man, and Tina A Maddox an unmarried woman, as joint tenants." The deed contains a handwritten notation—"out of trust"— next to an unchecked line pertaining to transfer tax. Tina's expert witness at trial agreed that note indicated no transfer tax was paid, but declined to glean any intent of the parties from this note, as its author was unknown. He surmised someone at the County Recorder's office or title insurance company was questioning how to record the deed without charging the transfer tax. The expert testified it was not helpful to consider Tina's discovery responses on the issue of the parties' intent, rather, their intent was evident from the face of the deed.

4

In September 2018, Tina filed a complaint against Sherman asserting causes of action for quiet title, partition and "unjust enrichment" based on the February 2004 grant deed. In part, she alleged that after she and Sherman finalized their dissolution, they reconciled and eventually executed the February 2004 deed in which Sherman granted her an undivided one-half interest in the property, superseding their dissolution judgment. Sherman answered the complaint with various affirmative defenses, including that Tina's complaint was barred by specified statutes of limitation, laches, unclean hands, equitable estoppel, waiver, consent, lack of consideration, and mistake. He also filed a cross-complaint asserting causes of action for financial elder abuse, slander of title, deceit and constructive trust.

The matter proceeded to a multi-day bench trial, during which both parties testified and Tina presented an expert in real estate and title, John Christopher Demas, on the issue of the parties' ownership interest in the property. Demas, whose qualifications Sherman did not challenge, explained the difference between equitable and record title; equitable title being the "actual ownership" of the property which may or may not be reflected in the County Recorder's office, and record title being the actual documents thus recorded. He testified that as of the effective date of the dissolution judgment, 100 percent ownership was transferred to Sherman. But following entry of the dissolution judgment, Sherman and Tina reestablished joint ownership of the property in February 2004 by executing the grant deed, remerging equitable and legal title. According to Demas, the parties' intention was to grant 50/50 ownership; the February 2004 deed was unambiguous as to that intent. He testified Tina executed the January 2010 quitclaim deed as an estate planning device to terminate the joint tenancy, and that quitclaim did not change the parties' 50/50 ownership. Demas

5

testified that Sherman and Tina had a 50/50 interest in the property as of May 2020, the date of his expert report. Nothing changed his opinion as to ownership after that time.

Tina testified that after she and Sherman signed their settlement agreement in January 2003, they still lived together as though they were married until August 2009. She took care of their finances and paid the bills with Sherman's knowledge. While she and Sherman did not reconcile their marriage, they reconciled their relationship. She testified Sherman put her back on the property title because that was what they both agreed to; he did not want her to leave and they were still in a relationship after their divorce. Tina acknowledged that in March 2003, between January 2003 when the judgment was entered and June 2003 when their marital status was to end, she created a living trust for herself alone and transferred her interest in the property to that trust so as to sever her and Sherman's joint tenancy. She testified she did so under her attorney's guidance.

Sherman's trial theory in part was that the February 2004 grant deed only purported to transfer Tina's title out of her trust to Tina as an unmarried woman, and did not transfer to Tina any portion of Sherman's 100 percent interest that he obtained in the marital settlement. According to Sherman, Tina was included on the 2004 deed only because she violated the settlement agreement and judgment by transferring her property into her trust in March 2003, clouding the title. He argued the terms of the settlement agreement were binding, and that agreement was not nullified by the parties' reconciliation, modified, revoked or superseded by the deed. Sherman based his claim of unclean hands on Tina's March 2003 transfer of title; he also argued Tina's quiet title claim was barred by waiver because she did not contest, modify or appeal the dissolution judgment and as a result

6

waived any objections to the settlement agreement, as well as any claim to legal, equitable or future ownership interest in the property. Sherman also argued Tina's quiet title claim was barred by his "mistake of fact or law" in not intending to transfer his ownership interest to Tina, and Tina's fraudulent claims to title, which Tina made after advising Sherman the deed "carried out the terms of the divorce."

At trial, Sherman contradicted Tina, testifying that after their divorce, he and Tina never lived together or reconciled their relationship. When presented with documents reflecting he and Tina signed for a cash-out refinance in 2004 he claimed after their divorce he was trying "the whole time" to "take [Tina] off the house because the house was awarded to [him.]" He could not explain why both he and Tina were listed as borrowers for the refinance. Sherman testified he remarried in November 2008, but acknowledged he was still depositing his employment income into a joint bank account with Tina through July 2009. Sherman's new wife testified she and Sherman lived together on the property and shared expenses beginning in 2007. Following the close of evidence, the parties did not make oral closing statements, but agreed to file written closing arguments.

Thereafter, the court entered a statement of decision. Acknowledging Tina's testimony concerning her and Sherman's reconciliation, it found Sherman lacked credibility on his claim that he and Tina did not reconcile or reside together after their separation. The court found Sherman's testimony was contradicted by the evidence of joint bank statements, receipts, checks, concert tickets and other events. It found Tina's version of events supported by other evidence as to domestic violence restraining order proceedings and motions related to the property. Among other findings, the court found Tina had a claim to the property's ownership as evidenced by the recorded deed,

7

and no evidence rebutted the Evidence Code section 662 presumption of ownership. It found the property's current ownership was vested in Sherman and Tina as unmarried persons with undivided one-half interests in the property as tenants in common. The court found Tina was entitled to partition as well as $67,860 in reimbursement from Sherman, which consisted of one-half the benefit Sherman received in reasonable rental value after Tina vacated the property, less the property expenses. It found all of the causes of action in Sherman's cross-complaint time-barred, and that Sherman had not met his burden to prove slander of title, fraud or entitlement to a constructive trust. The court declined to modify its statement after Sherman objected to it on various grounds.

Sherman filed this appeal.

DISCUSSION

I. *Standard of Review*

We apply settled review standards for a judgment based on a statement of decision following a bench trial. (See *Ribakoff v. City of Long Beach*, *supra*, 27 Cal.App.5th at p. 162; *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) We review questions of law de novo, and apply the substantial evidence rule to the trial court's findings of fact. (*Ribakoff*, at p. 162.) Under the substantial evidence standard of review, "findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Ibid.*; see also *Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 109.) " 'A single witness's testimony may constitute substantial evidence to support a finding. [Citation.] It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility. [Citation.] "A judgment or order of a lower court is presumed to

8

be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." [Citation.] Specifically, "[u]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." ' " (*Ribakoff*, at p. 162.)

When, as here, the court has issued a statement of decision under section 632 of the Code of Civil Procedure explaining the factual and legal basis for its decision, "the scope of appellate review may be affected . . . ." (*Thompson v. Asimos, supra,* 6 Cal.App.5th at p. 981.) "[I]f the statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, 'it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue.' " (*Ibid*.; see Code Civ Proc. § 634.) "The statement of decision provides the trial court's reasoning on disputed issues and is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law." (*Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718.)

But " ' "[a] trial court rendering a statement of decision under Code of Civil Procedure section 632 . . . is not required to make findings with regard to detailed evidentiary facts or to make minute findings as to individual items of evidence. Only where a trial court fails to make findings as to a material issue which would fairly disclose the determination by the trial court would reversible error result. Even though a court fails to make a finding on a particular matter, if the judgment is otherwise supported, the omission is harmless error unless the evidence is sufficient to sustain a finding in favor of the complaining party which would have the effect of countervailing or destroying other findings. A failure to find on an

9

immaterial issue is not error. [Citation.] . . . All that is required is an explanation of the factual and legal basis for the court's decision regarding such principal controverted issues at trial . . . ." ' " (*Ribakoff v. City of Long Beach*, *supra*, 27 Cal.App.5th at p. 163; see also *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 689 ["a court need only fairly disclose its determinations as to the ultimate facts and material issues in the case"]; *Thompson v. Asimos, supra,* 6 Cal.App.5th at p. 983.)

II. *Effect of Sherman's Objections to the Court's Statement of Decision*

Here, Sherman filed 36 separate objections to the court's statement of decision. He claimed certain of its findings were ambiguous, omitted ultimate facts, and/or conflicted with undisputed facts.[4] He claimed the court omitted critical facts as to his affirmative defenses. The court reviewed the objections and issued an order declining to modify the statement.

On appeal, Sherman contends that given his objections, we cannot imply findings favoring the judgment on appeal as "the doctrine of implied findings does not apply to many of the issues raised in this appeal, as identified below." By itself, this cursory and unspecific argument does not avoid the doctrine of implied findings. We will not deem Sherman's

---

[4] Some of Sherman's objections raised immaterial points without explanation as to how they related to a controverted matter. He objected that the statement of decision was ambiguous because the court stated the judgment of dissolution was "entered into by the court on June 8, 2003." The face of the judgment indicates it was signed and filed on January 15, 2003, and terminated his and Tina's marital status as of June 8, 2003. Sherman objected that the court's finding as to "[p]aragraph II of the judgment" was ambiguous because there was no such paragraph in the judgment, when it is plain from the language used that the court was referring to paragraph II of the parties' settlement agreement, incorporated into the judgment. The trial court did not err by failing to make further findings on such inconsequential matters. (See *Ribakoff v. City of Long Beach*, *supra*, 27 Cal.App.5th at p. 163.)

objections forfeited on appeal, but he is not excused from his appellate burden to demonstrate— with reasoned argument and authority—why the absence of the sought-after findings is not harmless. (See *Ribakoff v. City of Long Beach*, *supra*, 27 Cal.App.5th at p. 163.) And of course, Sherman's objections do not prevent us from upholding the judgment based on the court's *express* findings. We need not resort to implied findings when we can affirm the judgment on express findings that are determinative on the issue. In addressing Sherman's points on appeal, we are mindful that the court was not required to make findings on detailed evidentiary facts or other findings unless they prevented a fair understanding of the court's decision. (*Ibid.*)

III. *Sherman Has Forfeited Any Sufficiency of the Evidence Challenge*

As stated above, Sherman failed to provide a full and fair statement of the trial evidence, but instead recites facts and positions in his favor. For example, Sherman states that "Tina violate[d] the [divorce judgment]," apparently referring to Tina's March 2003 creation of a living trust and act of recording a deed conveying her interest in the property to that trust. He entirely omits any summary of the testimony of Tina's expert Demas, who explained equitable and legal title and the consequences and effect of the settlement agreement and various deeds, including the February 2004 deed granting title to the property in Sherman and Tina as joint tenants. Sherman offers facts of questionable relevance to substantive issues, and then mischaracterizes some of the testimony assertedly supporting the fact.[5]

---

[5] For example, Sherman points out that Tina did not list the property in a 2013 bankruptcy filing, a point relevant to her credibility, which we do not assess on appeal. (*Ribakoff v. City of Long Beach*, *supra*, 27 Cal.App.5th at p. 162.) He says that in 2010, Tina filed papers in the family court relating to the property and her request for rental income, then states that the court

11

He asserts Tina's conduct, including her creation of her trust and purchase of properties as an unmarried woman, is not "consistent with reconciliation." Ignoring Tina's testimony to the contrary, he misleadingly asserts Tina "*admits* there was no reconciliation," when she was narrowly referring to their marital status.[6]

Due to his one-sided presentation favoring his position, Sherman has forfeited any substantial evidence challenge. The presumption is that the record contains evidence to sustain every finding of fact and, thus, an appellant who challenges a finding is required to set forth in his or her opening brief "*all* the material evidence on the point and *not merely their own* evidence." (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; see also *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 ["A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable"]; *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409-410 ["An appellate court will consider the sufficiency of the evidence to support a given finding only after a party

" 'threw out' " her claim. But his record citations do not support the proposition. One citation is to Tina's testimony that her petition "was not resolved." In the other part of the record, Tina was asked why her 2010 matter did not proceed, and responded: "Because Sherman wouldn't answer." She was then asked:

> [Counsel:] Did you go in front of a judge *on this restraining order*?
> [Tina:] Yes.
> [Counsel:] And did the judge issue orders? What was the judge's decision?
> [Tina:] She threw it out." (Italics added.)

[6] At the cited portion of the record, Tina testified on cross-examination that her and Sherman's "relationship was reconciled." Counsel then asked, "So it would be inaccurate to say the marriage was reconciled . . . ?" Tina responded, "That is correct."

tenders such an issue together with a fair summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it"].)  Unless the appellant does so, the error is deemed waived. (*Foreman & Clark Corp. v. Fallon*, at p. 881.)  Accordingly, in this opinion, we do not assess the sufficiency of the evidence to support the court's factual findings; we presume they are supported by the record.

## IV.  *Quiet Title and Partition*

In a series of arguments, Sherman attacks the trial court's findings as to Tina's ownership of the property, and thus her entitlement to quiet title and partition.  He contends the court erred by ruling that he and Tina reconciled and entered into a new agreement as to the property's ownership that superseded their divorce judgment, and that Tina owned an undivided one-half interest as a tenant in common.  According to Sherman, the court misinterpreted the "plain meaning of the words used" in the 2004 deed, which shows Sherman did not transfer anything to Tina.

Sherman further contends Tina's creation of her trust and the transfer of her property interest to it were wrongful acts making her and her trust involuntary trustees of Sherman's interest in the property.  He maintains the court erred because he met his burden of proof to establish he was the property's "true owner" pursuant to the divorce judgment and was entitled to the statutory presumption (Evid. Code, § 662) as to ownership.  On the basis of these arguments, which Sherman incorporates by reference, Sherman

13

maintains the court erred in determining Tina was entitled to partition, claiming she "has no present ownership interest in the [p]roperty."[7]

## A. *Court's Reconciliation Finding*

Sherman's arguments as to evidence of the parties' reconciliation are unavailing.[8] Citing *Kelley v. Kelley* (1969) 272 Cal.App.2d 379 and *In re Marriage of Modnick* (1983) 33 Cal.3d 897, he argues the court's finding that the parties had reconciled is not supported by substantial evidence; that its findings do not address the issues needed to prove the "spouses mutually

---

[7] Sherman's objections to the trial court's statement of decision on these issues have recurring themes. He objected that the statement was ambiguous because the court referred to the settlement agreement, and also in various other places to a "new agreement," "subsequent agreement," and "superseding contract" without saying whether they were the same or different agreements; the court did not say whether any of those agreements were express or implied; and the statement of decision only provided legal conclusions without making findings as to the "essential elements" of the agreements or contracts. Sherman's objection No. 20 complained that the court's finding that Tina is entitled to partition omitted unspecified "critical" findings. He referenced his previous objections 1 through 19, stating without the sought-after findings, Tina's right to partition "cannot be determined." But, as with his other objections to the statement of decision, Sherman makes no effort on appeal to discuss harmless error or explain why the absence of implied findings on these matters is fatal to the judgment.

[8] Sherman objected to the court's use of the term "reconciled" in its statement of decision, arguing the statement should be clarified to "address the status of the parties' marriage after June 6, 2003[,]" and "clearly identify the nature, scope, or legal status of the parties' relationship after June 6, 2003." Presumably Sherman intended to refer to the dissolution judgment's use of June 8, 2003, as the termination date of the parties' marital status. In any event, the court was not required to include additional evidentiary facts in its statement. And Sherman does not explain on appeal why the absence of a finding on the parties' legal marital status after June 8, 2003, is fatal to the judgment.

14

intended to resume their marital status and to live together on a permanent basis."

As stated, Sherman has forfeited his substantial evidence challenge by disregarding Tina's testimony and evidence (by way of bills, joint bank account statements, concert tickets and other items) that he and Tina resumed their relationship, continued to live together at the property as if they were married, and reached an agreement about its ownership different from the divorce judgment. Additionally, his arguments have an incorrect premise, namely that Tina sought to prove the parties mutually intended to restore their *marital status or rights*, when she merely sought to prove her ownership interest in the property by showing she and Sherman decided to restore their joint tenancy status as unmarried persons via the 2004 deed.

Sherman's arguments are also based on inapposite case law, involving parties who sought to prove or disprove a reconciliation after entry of an *interlocutory* divorce decree for the purpose of either vacating or obtaining a final dissolution judgment. (*Kelley v. Kelley*, *supra*, 272 Cal.App.2d at p. 381 [spouse moved for entry of a final judgment of divorce on grounds parties had *not* unconditionally reconciled after their interlocutory divorce decree; "[r]econciliation of the parties after the entry of an interlocutory decree of divorce terminates the right to a final judgment"]; see *In re Marriage of Modnick*, *supra*, 33 Cal.3d at p. 911 [" 'When parties become reconciled after an interlocutory decree and live together as husband and wife, the right to a final decree is destroyed [citations], and they are entitled to such rights as arise from the legal relation of husband and wife' "; reviewing court considered spouse's argument that final judgment of dissolution should be set aside on grounds parties had reconciled after entry of interlocutory decree].) In that context, the party asserting reconciliation must show " 'clear and

15

cogent proof" that the spouses mutually intended to resume their marital status and to live together on a permanent basis." (*In re Marriage of Modnick*, at p. 911.)  But Tina did not seek to vacate or set aside the divorce decree or prove she had rights arising " 'from the legal relation of husband and wife.' " (*Ibid*.)  Sherman's arguments do not persuade us to reverse the judgment.

B. *Interpretation of 2004 Grant Deed*

We reject Sherman's arguments as to the interpretation and effect of the 2004 grant deed and its reflection of the parties' intentions.  Sherman maintains the "plain and clear language" of the granting clause of the 2004 deed shows the "only interest transferred . . . was an undivided one-half interest from Tina A. Maddox, [t]rustee, out of trust to Tina A. Maddox, as an unmarried woman."  He characterizes the deed as a "limited transfer" that was affirmed by a "property tax declaration" on the deed's face stating the transfer was " 'out of trust.' "  Sherman argues:  "Accordingly, there is nothing within the four corners of the 2004 [g]rant [d]eed indicating that Sherman transferred anything to Tina . . . ."

It is true that grant deeds are to be interpreted as contracts.  (Civ. Code, § 1066; *Pear v. City and County of San Francisco* (2021) 67 Cal.App.5th 61, 70.)  But " [t]he primary object of all interpretation is to ascertain and carry out the intention of the parties.  [Citations.]  All the rules of interpretation must be considered and each given its proper weight, where necessary, in order to arrive at the true effect of the instrument.  [Citation.]' [Citations.]  'Extrinsic evidence is "admissible to interpret the instrument, but not to give it a meaning to which it is not susceptible" [citations], and it is the instrument itself that must be given effect.  [Citations.]  It is therefore solely a judicial function to interpret a written instrument *unless the*

16

*interpretation turns upon the credibility of extrinsic evidence.*  Accordingly, "[a]n appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation]." ' " (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238, italics added.)  We review the trial court's resolution of any conflicting extrinsic evidence for substantial evidence.  (*Pear*, at p. 70.)

Here, Tina presented extrinsic evidence surrounding the execution of the 2004 grant deed to explain her and Sherman's intentions.  This evidence assisted the court in determining the deed's meaning.  (*Rancho Pauma Mutual Water Co. v. Yuima Municipal Water Dist.* (2015) 239 Cal.App.4th 109, 115.)  " ' "[T]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." ' " (*Ibid.*)  It is only when no conflicting extrinsic evidence is admitted does contract interpretation become a question of law that we review de novo.  (*Ibid.*)

Sherman's arguments fail to acknowledge the evidence surrounding the 2004 grant deed's execution and the parties' intent, which the court credited in Tina's favor.  That evidence showed Tina and Sherman intended to and did reestablish joint ownership of the property notwithstanding the dissolution of their marriage.  This evidence includes Tina's expert's testimony concerning the effect of the deed, and it constitutes substantial evidence supporting the court's finding that the 2004 grant deed vesting title to the property in Sherman and Tina as unmarried man and unmarried woman "as joint

17

tenants," resulted in Tina obtaining a one-half ownership interest. Sherman ignores the designation of the parties as joint tenants in the deed's granting clause. "A grant is to be interpreted in favor of the grantee . . . ." (Civ. Code, § 1069; see also *City of Manhattan Beach v. Superior Court, supra*, 13 Cal.4th at pp. 242-243 [" 'doubtful clauses in the deed are to be construed most strongly against the grantor, and as favorably to the grantee as the language, construed in the light of the surrounding facts, will justify' "].)[9]

We acknowledge that the 2004 grant deed identifies as a grantor Tina in her capacity as trustee of her trust. The deed also contained handwritten words "out of trust" written by an unknown person. At most, this rendered the deed's meaning ambiguous. (See *Rancho Pauma Mutual Water Co. v. Yuima Municipal Water Dist., supra*, 239 Cal.App.4th at p. 117 [defining ambiguity as " 'an unclear, indefinite, or equivocal . . . meaning' "].)[10] "A word or expression is said to be ambiguous when it is 'open to having several possible meanings or interpretations' " and "[a]mbiguities in a written instrument are either patent (arising from the face of the writing) or latent (based on consideration of extrinsic evidence)." (*Ibid*.) But Tina's expert resolved that ambiguity, explaining that three days before the parties executed the February 2004 deed, Tina as trustee of her trust had already conveyed the property back to herself as an individual unmarried woman;

---

[9]     The statute contains an exception "that a reservation in any grant . . . is to be interpreted in favor of the grantor." (Civ. Code, § 1069.) No reservation appears in the 2004 deed, which we interpret in Tina's favor.

[10]     The trial court found the deed's language unambiguous as to the "marital status, or the joint tenancy created with the execution of this deed." To the extent our conclusions conflict, we rely on the settled principle that "we may affirm the trial court's ruling 'on any basis presented by the record whether or not relied upon by the trial court.' " (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 802.)

18

that those few days was not enough time for the title company to update their records; and that the "out of trust" notation on the deed was intended to indicate there was no documentary transfer tax. He testified that the "[h]ereby grants to Sherman Maddox, an unmarried man and Tina Maddox, an unmarried woman as joint tenants" reestablished the parties' joint tenancy.

C. *Constructive Trust Argument*

Sherman's constructive trust argument—that Tina and her trust were involuntary trustees of his interest in the property—is premised on the idea that Tina's March 2003 transfer to her trust somehow violated the divorce judgment or breached her fiduciary duty to Sherman and thus Tina either wrongfully detained or wrongfully gained (Civ. Code, §§ 2223, 2224) title to the property.

The argument fails on its premise. The notion that Tina violated the terms of their divorce judgment is contradicted by the trial evidence— accepted by the court—that Sherman and Tina elected not to abide by their divorce judgment but instead continued their relationship and agreed to restore their 50/50 ownership interest in the property via the 2004 grant deed. Further, expert Demas testified that Tina's March 2003 transfer was an estate planning mechanism, and his opinion was that the judgment awarded Sherman 100 percent ownership of the property on June 8, 2003— *after* Tina's transfer. He testified that if there was a question about the ultimate disposition of the property, it would be prudent for a spouse to separate their ownership from their future ex-spouse. The evidence does not support Sherman's assertion that Tina's transfer occurring before the effective date of the parties' dissolution violated the judgment.

19

D. *Court's Ruling That the Parties' Contract Superseded the Dissolution Judgment*

In its statement of decision, the trial court found that the parties' dissolution judgment constituted a contract that neither party followed. It found that instead, at some point between January 6, 2003, and February 27, 2004, they entered into a superseding contract via grant deed for Tina to be placed back on title. As stated, Sherman challenges this finding, arguing a divorce judgment is not a contract, and a contract cannot modify the parties' divorce judgment. He cites *In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492 (*Thorne*) for the proposition that marital property rights and obligations adjudicated by a final judgment cannot be upset by subsequent efforts to modify the judgment, and he argues no exceptions to that rule apply. Thus, according to Sherman, there was "no legal or factual basis" to allow the divorce judgment to be modified by contract, including the 2004 deed.

We are not persuaded. Again the premise of Sherman's argument—that Tina sought to modify her and Sherman's divorce judgment or that the trial court did so—is flawed. Tina's quiet title and partition action was a civil action involving ownership and title to real property as evidenced by recorded documents effecting title transfers. The applicable principle—as the trial court acknowledged—is the Evidence Code 662 so-called form-of-title presumption. (Evid. Code, § 662 ["The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof"]; see *Estate of Wall* (2021) 68 Cal.App.5th 168, 169, 173 [Evidence Code section 662 presumption "remains viable for civil matters"].) The matter does not implicate interspousal property transfers or questions of transmutation and fiduciary obligations,

20

because the real property transfers here occurred after the June 8, 2003 termination of the parties' marital status, and the parties took title as unmarried persons.  (Compare *In re Brace* (2020) 9 Cal.5th 903, 935 [elucidating "the default rules that govern characterization of property *during marriage*," including that Evidence Code section 662 does not apply when it conflicts with the Family Code section 760 presumption that all property acquired by a married person while domiciled in this state is community property (italics added)]; and *In re Marriage of Delaney* (2003) 111 Cal.App.4th 991, 998 ["In cases . . . involving interspousal property transactions, the 'irreconcilable conflict' between the two presumptions established by [Family Code] section 721 and Evidence Code section 662 has been resolved in favor of [Family Code] section 721, based on the intent of the Legislature in enacting fiduciary protections for interspousal transactions and general rules of statutory construction"].)  Neither the judgment nor settlement agreement contains an anti-modification clause; neither prevented the parties from mutually making later decisions concerning the property's ownership notwithstanding the dissolution judgment awarding it to a particular spouse.  (Compare *In re Marriage of Carletti* (1975) 53 Cal.App.3d 989, 995 [parties stipulated that support payments shall not be modified " 'for any reason whatsoever' "].)

The circumstances here differ from those in *Thorne*, *supra*, 203 Cal.App.4th 492.  In that case, a husband and wife entered into a marital settlement agreement awarding the wife a percentage of the husband's military pension.  (*Id*. at p. 496.)  Years after the agreement became part of an uncontested judgment of divorce, the wife, acting unilaterally, successfully obtained modification of the judgment based on a claimed a mistake of law concerning how to divide the pension.  (*Id*. at pp. 497, 499.)

21

The Court of Appeal reversed the order modifying the judgment. (*Thorne, supra,* 203 Cal.App.4th at p. 495.) It explained that "once a marital dissolution judgment has become final, the court loses jurisdiction to modify or alter it." (*Id.* at p. 499.) It was in that context that the court stated, "marital property rights and obligations adjudicated by a final judgment cannot be upset by subsequent efforts to 'modify' the judgment." (*Ibid.*) The appellate court stated the sole remedy was a timely set-aside motion, a timely appeal, or a Family Code section 2120 set-aside proceeding. (*Ibid.*) Because the periods in which to take those actions expired, the trial court lacked jurisdiction to make the modification. (*Id.* at p. 500.)

As stated, Tina did not seek to modify the parties' dissolution judgment. She presented evidence that the parties, following entry of the judgment and in their capacity as unmarried persons, elected to have Tina retain an interest by transferring the property to themselves as joint tenants. *Thorne* does not persuade us to disturb the judgment.

E. *Sherman's Burden of Proof*

Sherman contends the court erred because he met his burden of clear and convincing proof to rebut the Evidence Code section 662 presumption of ownership. Citing *Buic v. Buic* (1992) 5 Cal.App.4th 1600, he maintains that the divorce judgment awarded him 100 percent ownership, and though he and Tina continued to have record title, he was the "true owner" under that judgment. Thus, according to Sherman, the divorce judgment rebutted the presumption as a matter of law.

These arguments disregard Tina's evidence as to the timing of events, as well as her expert's testimony about the effect of the 2004 deed executed *after* the divorce judgment awarded Sherman the property, giving him equitable title. *Buic* does not mention, much less discuss, the Evidence Code

22

section 662 presumption. *Buic* involved a former wife's assertion of adverse possession to a home following a marital dissolution judgment awarding the property to her former husband. Post-judgment, the wife continued to reside in the home, making all mortgage and property tax payments. (*Buic v. Buic, supra,* 5 Cal.App.4th at p. 1602.) On the wife's motion for summary judgment in the husband's action for constructive trust and fraud, the parties presented conflicting evidence: according to the wife, the husband wanted nothing to do with the house, but the husband believed his attorney had transferred title to him and he and the wife had agreed she would stay in the house and pay the mortgage and property taxes in lieu of rent. (*Id*. at p. 1603.) The *Buic* court reversed the summary judgment in wife's favor, applying a presumption that her continued possession after the dissolution judgment awarded the home to the husband was subordinate to the husband's rights, not adverse, "until express notice is given to the owner of the possessor's adverse claim." (*Buic,* at p. 1605.) It held "given the presumption that [wife's] continued possession was with [husband's] consent and his declaration that they expressly agreed her possession was consensual, there was plainly a triable issue of material fact." (*Buic*, at p. 1606.)

To the extent *Buic* stands for a broader meaning than simply that conflicting evidence prevented summary judgment, it is that a dissolution judgment's award of property to one spouse may be overcome by the other spouse's valid claim of legal title to the property, including through adverse possession, as long as he or she "make[s] a strong showing of proof on each of the required elements." (*Buic v. Buic, supra,* 5 Cal.App.4th at pp. 1604-1605.) Sherman cites a snippet of *Buic* where the court stated: "Pursuant to the parties' dissolution judgment the property had been awarded to [the

23

husband] as his separate property. Therefore, although record title remained in [the wife's] name allowing her to convey the property, or an interest in it, to a bona fide purchaser, [the husband] was the true owner pursuant to the dissolution judgment." (*Buic*, at pp. 1603-1604.) Setting aside it is dictum, the *Buic* court's remark is not inconsistent with Tina's evidence that Sherman was the 100 percent equitable owner following the dissolution judgment. But here, Tina established the parties mutually agreed to change legal title via a grant deed notwithstanding that award. In short, *Buic* does not compel us to conclude the parties' dissolution judgment rebuts the Evidence Code section 662 title presumption arising from Sherman and Tina's later execution of the 2004 grant deed.

## V. *Sherman's Affirmative Defenses*

Sherman contends the court erred because his affirmative defenses bar Tina's ownership claims. He points out that the court made no findings on them in its statement of decision, despite his request.[11] Our task would normally be to assess whether the court's omission is harmless error, that is, whether Sherman has shown the " 'evidence is sufficient to sustain a finding in [his] favor . . . which would have the effect of countervailing or destroying other findings.' " (*Thompson v. Asimos*, *supra*, 6 Cal.App.5th at p. 983.)

---

[11]   Sherman's objection Nos. 25 through 33 to the court's statement of decision addressed the court's failure to make findings on his affirmative defenses of failure to state a cause of action, statute of limitations, laches, unclean hands, equitable estoppel, waiver, lack of consideration, mistake and fraud. For most of these, Sherman objected that the court did not make "critical findings" on ultimate facts, including as to the "formation and essential elements" of the new, subsequent, or superseding agreements referred to elsewhere in the statement of decision. He stated the essential elements "may provide a basis for application" of some of these defenses. He asked that the statement be amended to include the findings, which he did not specify.

But Sherman does not frame his arguments in terms of harmless error, he merely argues the evidence establishes Tina's claims are barred by the statute of limitations, her unclean hands, laches, equitable estoppel, judicial estoppel, his mistake of fact or law, lack of consideration, and waiver or consent. Some of Sherman's arguments—as to the absence of consideration or mistake—are based on a now-forfeited claim of insufficient evidence, or on facts contradicted by Tina's evidence. Other arguments—as to waiver and consent—we disregard as entirely unsupported by reasoned legal argument and authority. (*Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 521 [" ' " 'When an appellant [asserts a point] but fails to support it with reasoned argument and citations to authority, we treat the point as waived [or forfeited]' ' "; appellate court is " ' "not bound to develop appellants' arguments for them" ' "].) One of Sherman's arguments is on a defense— judicial estoppel—that he did not plead in his verified answer. Likewise, though Sherman argued several of his affirmative defenses in his trial brief, he did not include in it the heavily fact-dependent defenses of laches or equitable estoppel.[12] We do not consider arguments or theories, even

---

[12] " ' " '[F]our elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) [that party] must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) [the other party] must rely upon the conduct to his [or her] injury.' " ' " (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 564-565.) "[W]hether a [party]'s conduct is sufficient to invoke the doctrine is a factual question entrusted to the trial court's discretion." (*Cuadros v. Superior Court* (1992) 6 Cal.App.4th 671, 675.) " 'The elements required to support a defense of laches include unreasonable delay and either acquiescence in the matter at issue or prejudice to the defendant resulting from the delay . . . . Generally, laches is a question of fact . . . .' " (*Krolikowski*, at p. 568.)

defense theories, not raised below. (*Family Health Centers of San Diego v. State Department of Health Care Services* (2021) 71 Cal.App.5th 88, 98 [" ' "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider" ' "]; *Bardis v. Oats* (2004) 119 Cal.App.4th 1, 13-14, fn. 6 [new defense theories may not be raised for the first time on appeal]; accord, *Martin v. Van Bergen* (2012) 209 Cal.App.4th 84, 91 [failure to properly plead statute of limitations defense waives that defense].) We note that Code of Civil Procedure sections 318 and 319 set out statutes of limitation for actions arising out of the possession and title to real property, "or to rents or profits out of same." (Code Civ. Proc., § 319; see *Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319, 1327-1329 [holding these sections govern an action for quiet title and other disputes over ownership interests in real property].) But Sherman pleaded neither in his answer.

Further, Sherman has not presented an adequate record permitting us to undertake the harmless error analysis. The requirement that the court issue a statement of decision explaining the factual and legal basis for its decision applies to " 'each of the principal controverted issues at trial . . . .' " (*Furry v. East Bay Publishing, LLC* (2018) 30 Cal.App.5th 1072, 1084; see also *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1115 [statement of decision must address controverted issues].) " ' "It is essential that, unless they are waived, findings be made on every material issue raised by the pleadings and the evidence, whether those issues are raised by denial of the allegations of the complaint or cross-complaint, or on affirmative defenses set up in the answer or cross-complaint." ' " (*Furry,* at p. 1084.)

Here, Sherman has not established that the affirmative defenses he raises were controverted trial issues, much less principal controverted trial issues, such that the court's failure to make findings prejudiced him. (Compare *Furry v. East Bay Publishing, LLC, supra*, 30 Cal.App.5th at p. 1084 [plaintiff demonstrated his "wage statement claim was a principal controverted issue at trial because it was asserted in the complaint, the allegations were denied in [the defendant's] answer, and . . . the issue was raised at trial through counsel's arguments and [plaintiff's] submission of his wage statements and . . . related testimony"; because the plaintiff brought the omission to the court's attention, the Court of Appeal would not imply findings in defendant's favor on that issue].) Because the parties waived opening statements, and Sherman does not include his or Tina's written closing arguments in the appellate record, we cannot say whether Sherman contested these matters in the lower court.

In reply, Sherman asks us to apply his statute of limitations, laches and equitable estoppel affirmative defenses in any event. He points out that new theories pertaining to questions of law on undisputed facts may be raised for the first time on appeal. We decline to exercise our discretion to do so. "Although appellate courts have discretion to consider an issue in the first instance if it raises a question of law on undisputed facts, our Supreme Court has cautioned that such discretion should be exercised rarely and only in cases presenting an important legal issue." (*Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44; see also *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 654, fn. 3 ["parties may advance new theories on appeal when the issue posed is purely a question of law based on undisputed facts, and involves important questions of public policy"], abrogated on another ground as stated in *Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 774-775.)

27

Even if we were to decide the importance of these matters justified considering them, we are unable to say on this record they raise a pure legal question. The record contains evidence that Tina and Sherman in August 2010 stipulated to have a private judge assist them in resolving issues as to the property, but according to Tina, they never went forward with it because Sherman "wouldn't appear" and the parties "never got it settled." The evidence suggests the possible application of equitable tolling that might operate to suspend or extend the limitations period to ensure " ' "fundamental practicality and fairness." ' " (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 719; *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370.) Thus, under Sherman's own cited authority, the assertedly uncontroverted facts raised by Sherman might "be altered by the presentation of additional evidence" (*In re Marriage of Priem* (2013) 214 Cal.App.4th 505, 510-511) rendering it inappropriate to decide the issues for the first time on appeal.

## VI. *Award of Rent to Tina*

The trial court made the following findings when ordering Sherman to pay Tina $67,860 in rental value minus expenses associated with the property: "The court accepts Tina['s] . . . testimony that she vacated the property on or about August 22, 2009, with the property having a reasonable rental value of $2,100 [per] month at that time and increasing to $2,700 in 2021. [Tina] testified as to the rental value at that time, in addition to her belief that the rental value increased at an average of $50 [per] year. The court notes that this testimony was not rebutted by [Sherman].

"The court finds that on November 6, 2009, [Sherman] was put on notice that [Tina] would be requesting the reasonable rental value (Watts

28

Credits equivalent) in [a] letter where [Tina] affirmatively, through counsel, claimed the property as hers and demanded rent. . . .

"The court also accepts the testimony of [Tina] that the average expenses associated with the property totaled $1,440 per month. That includes mortgage principal and interest of $1,015, property tax of $175, insurance of $100, and line of credit payments of $150.

"The court therefore orders Sherman . . . to pay Tina . . . the sum of $67,860 in reimbursement to be paid from [Sherman's] share of the real property proceeds or buy-out. This figure represents one-half of the benefit Sherman has received, less the expenses of the property and was testified to by [Tina]."

Sherman challenges the court's ruling on several grounds. Incorporating all of his prior arguments by reference, he argues Tina has no ownership interest. He argues Tina's claim for rent is untimely under a four-year statute of limitations (Code Civ. Proc., § 343), as her claim accrued in November 2009, and she did not file suit until September 2018. He argues the claim for rent is not supported by substantial evidence. In challenging the sufficiency of the evidence, Sherman points out the court excluded some of Tina's testimony on the issue as improper expert opinion and argues it abused its discretion by reversing its ruling after completion of trial. Sherman further argues that even if Tina's testimony was admissible and

accepted, it "was not sufficient to support the amounts of rent awarded by the court."[13]

We have already rejected Sherman's challenges to the court's rulings on Tina's ownership interest. His general incorporation of arguments by reference gives us no reason to disturb the judgment. Sherman has forfeited his substantial evidence challenge for the reasons discussed above, and also because his arguments are entirely without cogent argument or citation to authority. (*Sviridov v. City of San Diego, supra,* 14 Cal.App.5th at p. 521; *Munoz v. Patel* (2022) 81 Cal.App.5th 761, 773.)

As for the statute of limitations, we question whether the proper section is Code of Civil Procedure section 343, as a different statute, Code of Civil Procedure section 319, not pleaded in Sherman's answer, sets out a five-year statute of limitation for an action arising out of title to real property "or to rents or profits out of same." But regardless of the applicable limitations period, again, there is no indication that during trial Sherman raised a statute of limitations defense, which was his burden to prove. (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 945.) "It is well-

---

[13] Sherman objected to the court's statement of decision finding that Tina was entitled to recover rent (objection Nos. 21-24). He complained that the court referred to an unpleaded cause of action (for "recoverable costs/reimbursements owed by defendant to plaintiff as a result of his exclusive use and possession of the property," capitalization omitted) whereas Tina's third cause of action was for unjust enrichment. He claimed the statement of decision on this point omitted critical findings as to the elements of unjust enrichment, whether there was any agreement entitling Tina to rent, whether he has been unjustly enriched, and the timeframe for which Tina was entitled to recover rent. But on appeal, Sherman contradicts one of his objections, acknowledging that the court awarded Tina rent "from September 2009 through present." As to all of them, Sherman does not explain on appeal how these particular points warrant reversal.

settled that the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue" unless it presents a pure question of law or involves undisputed facts. (*Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489.) When a cause of action accrues is generally a question of fact we review for substantial evidence. (*Madani v. Rabinowitz* (2020) 45 Cal.App.5th 602, 607.) And, as we have pointed out above, there are indications in the record that the parties sought to resolve their disputes informally, taking accrual outside a pure question of law.

We have serious concerns about Tina's delay in filing suit. "Laches may bar relief in equity to those who neglect their rights, where such neglect operates to the detriment of others." (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1417.) But "unreasonable delay by the plaintiff is not sufficient to establish laches. There must *also* be prejudice to the defendant resulting from the delay or acquiescence by the plaintiff." (*Ragan v. City of Hawthorne* (1989) 212 Cal.App.3d 1361, 1368, fn. omitted.) And, " '[p]rejudice is never presumed; rather it must be affirmatively demonstrated by the defendant in order to sustain his burdens of proof and the production of evidence on the issue.' " (*Piscioneri v. City of Ontario* (2002) 95 Cal.App.4th 1037, 1050, quoting *Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624; *Ragan*, at p. 1368.) Sherman has not pointed to evidence establishing such prejudice.

### VII. *Sherman's Cross-Complaint*

As stated above, the trial court ruled against Sherman on his cross-complaint's causes of action. On appeal, Sherman challenges only the elder abuse and slander of title rulings. Pointing out he objected to the court's

statement of decision,[14] he contends those claims were not barred by the statute of limitations as the court ruled, and that his elder abuse claim was supported by substantial evidence.

A. *Elder Abuse Claim*

On Sherman's claim for elder abuse, the trial court found (1) the claim was time barred by the four-year statute of limitations; (2) Sherman was not an elder when the conduct underlying the claim—Tina's resumption of title via the 2004 grant deed—occurred; and (3) Sherman was on notice of Tina's ownership claim to the property in 2010.

Sherman contends his evidence and undisputed facts established each of the essential elements of elder abuse. The premise of this argument is his assertion, contradicted by evidence from Tina and her expert, that "the evidence established [he] owned 100 [percent] of the property in May of 2018." He recites additional facts in his favor. We do not address the contentions, as Sherman forfeited any substantial evidence arguments for his deficiencies identified above.

As for the statute of limitations, Sherman further contends "the alleged specific conduct giving rise the [*sic*] Sherman's elder abuse claim occurred after May 2018." But the trial court expressly found that "[t]he conduct

---

14 Sherman states he objected to the court's statement of decision in part on grounds the court's findings were "based on the wrong date of occurrence." The assertion is not supported by the record. Sherman's objection Nos. 34, 35 and 36 pertained to his cross-complaint's causes of action. In them, he complained the court's statement of decision "omits findings of critical facts" as to these claims, and thus the statement "contains findings outside the issues raised." He asked the court to amend its statement to "address the issues raised in the cross-complaint" for each of these causes of action. None of these objections mentioned the date of the occurrence(s) giving rise to his claims.

forming the basis for liability for all causes of action in Sherman's cross[-]complaint is Tina's resumption on title to the subject property in 2004 per the 2004 grant deed." (Some capitalization omitted.) "We must accept as true all evidence supporting the trial court's findings, resolving every conflict in favor of the judgment. [Citation.] We do not determine credibility or reweigh the evidence. [Citation.] If substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding." (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.)

B. *Slander of Title*

The trial court found Sherman failed to meet his burden of proving a slander of title occurred, and that the claim was also barred by the statute of limitations. " 'The elements of a cause of action for slander of title are "(1) a publication, (2) which is *without privilege* or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." ' " (*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 434, fn. 14.) "The substantial evidence standard of review takes on a unique formulation where, as here, 'the trier of fact has expressly . . . concluded that the party with the burden of proof did not carry the burden and that party appeals.' [Citations.] '[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' [Citation.] Specifically, we ask 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*In re S.G.* (2021) 71 Cal.App.5th 654, 671.)

Sherman does not apply these principles. He does not squarely address the court's ruling as to his failure to meet his burden of proof, discuss the

elements of the claim or the evidence he presented on them, if any.  He only contends the court erred by its statute of limitations ruling.[15]

The court's unchallenged finding that Sherman failed in his burden to demonstrate a slander of title permits us to uphold the judgment against him on that claim.  We need not address the statute of limitations.

DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DATO, J.

---

[15]    According to Sherman, his cause of action is based on Tina's failure in 2015 to quitclaim title back to him; he asserts the "alleged conduct giving rise to this cause of action occurred in 2015 when Tina published her claim that she owned 50 [percent] of the property to lender(s) with whom Sherman attempted to consolidate refinance and [home equity] loans in 2015."  (Some capitalization omitted.)  Sherman cites to his cross-complaint's allegations, however, not to any evidence he or Tina presented at trial.